i

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

FILED

SEP 0 3 2024

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

Ryan K. Smith
      PLAINTIFF, Pro-Se

VS.

STEVE KUNZWEILER,
DISTRICT ATTORNEY
FOR TULSA COUNTY,
AND STATE OF OKLAHOMA;
      DEFENDANT(s) Et al.

24 CV - 4 1 1 JDR - MTS

Case no._____

## CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C.§1983

Ryan K. Smith
D.O.C.# 643298
Lexington Correctional Center
P.O. Box 260
Lexington, Oklahoma.73051

Fees due
(1) summons

ii

## JURISDICTION AND VENUE

Comes now the plaintiff, Ryan K. Smith #643298, a state prisoner pro-se and as a poor person and submits this Civil Rights Complaint against the above-Defendant(s). The plaintiff alleges and states:

1. The cause of this action is brought under **42 U.S.C. § 1983** with this court having jurisdiction under **28 U.S.C. §§ 1343**. Jurisdiction is also asserted under the Federal Declaratory Judgment act, **28 U.S.C. § 2201**, et seq. Additionally, the Supreme Court determined in **Skinner vs. Switzer** that a **§ 1983** action is the proper vehicle for a suit challenging a state DNA testing statute. **Skinner v. Switzer**,562 U.S. 521.

2. This action does not involve diversity jurisdiction.

3. Venue is proper under **28 U.S.C. § 1391**(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

4. DNA testing challenge: **Osborne** and **Skinner** the Supreme Court stated in **Osborne** and then in **Skinner** that challenges to DNA testing procedures may be brought in a **§ 1983** action because requesting access to testing does not necessarily imply the guilt or innocence of a defendant as the defendant is not yet in possession of exculpatory evidence. **Skinner vs. Switzer**, 562 U.S. 521 **Dist. Attorney's Office for Third Judicial Dist**. **Osborne**, 557 U.S. 52 (2009). See also, **Hall vs. Bellmon**,935 F.2d 1106 at 1110 (10th Cir.1991) Rule that pro se litigant's pleadings are to be construed liberally and held to less stringent standard than formal pleadings drafted by lawyers means that if court can reasonably read pleadings to state a valid claim on which plaintiff should prevail, it should do so despite plaintiffs' failure to cite proper legal authority, and confusion of various legal theories, his poor syntax and sentence construction.

# Table of Content's

**Pages**

Jurisdiction…………………………………………………………………………………...ii
Statement of the Case……………………………………………………………….....….....vi
Statement of the Facts……………………………………………...……………….........vii
Conclusion…………...…………………………………………………………….......15
Verification …………..………………………………………………………………...…...16
Certificate of Mailing......................................................................................................................15
Signature……………………...……………………………………….....................................16
Previous Federal Civil Actions Or Appeals………………………………………...…….v
The Parties To This Complaint……………………………………………………….....…vi
Exhaustion of State Court remedies……………………………………...……………...…15

## <u>Ground-I</u>

TRIAL JUDGE **ABUSE OF DISCRETION** BY REFUSING TO **SANCTION** THE TULSA POLICE DEPARTMENT AND / OR DISTRICT ATTORNEY OFFICE FOR THE **BAD FAITH** DESTRUCTION OF THE PLAINTIFF BIOLOGICAL EVIDENCE WHICH WAS DONE IN VIOLATION OF **22 O.S. § 1372(C)(1)-(3)**. THIS VIOLATION PROVES OKLAHOMA'S POST-CONVICTION DNA ACT IS UNCONSTITUTIONAL. AND IN VIOLATION OF THE PLAINTIFF PROCEDURES DUE PROCESS RIGHT WHICH IS PROTECTED BY THE FOURTEENTHAMENDMENT OF THE UNITE STATES CONSTITUTION………...................1

A. "Biological Material Evidence" Did Exit In This Case. However, the Evidence
   Demonstrating The Chain of Custody Is Insufficient For DNA Testing due to the
   **bad faith** destruction of plaintiff biological evidence by the Tulsa police department….....3

B. The Reason Why The Trial Judge Should Have Enforce <u>Sanctions</u>……………..……………4

C. The Proof of the Tulsa police department <u>bad-faith</u> history of destroying the plaintiff
   biological evidence……………………………………………………………….....….6

D. The Tulsa Police department history of destroying and / or mishandling
   <u>civilians</u>' DNA / evidence inside their property room……………………………..…....…11

   A. Fingerprint Evidence……………………………………………………...…..…….12
   B. Post-it note…………………………………………………………………….....…13
   C. Evidence hidden in desk………………………………………………….…....…….13
   D. Missing vault keys……………………………………………………….…..….…14
   E. Condition of the Tulsa police dept property room……………………………….……14

## Table of Content's
## Continued

Pages

Federal Cases
Anna Maria Cowdrey vs. The city of Tulsa and Whitney Allen, Christopher Stout
and Anthony Cellino, Case no. 05-CV—461-TCK-PjC at 7,8-10,11,16-17 21-
24……………….…………………………………………………………………………………...6,11

Arizona vs. youngblood,108 S.ct 1072………………………………………………………...6,10

Dist, Atty's office for the third judicial district vs. 557 U.S. 52,67-69 (2009)…………….…….…4

Hall vs. Bellmon,935 F.2d 1106 at 1110 (10th Cir.1991)………………………………...............ii

People vs. Sam 658 P.2d 157 (Colo.1984)…………………………………….................…….6,15

Reed vs. Goertz 143 S.ct 955………………………………………………….....................…..4,11

Skinner vs. Switzer, 562 U.S. 521 562 U.S. 525…………………………………….…….…...…4

United States vs. Banks,2023WL109968…………………………………….…………….……...1,6

United States vs. Baca,687 F.2d 1356,1359 (10th cir. 1982)…………………………….......…..6,15

U.S. vs. Loud Hawk,628 F.2d 1139,1152 (9th cir.1979)……………………….....................……...6

United State vs. Rivera, 900 F.2d 1462 (10th cir.1990)……………………..……………….…....4

West vs. Atkins, 487 U.S. 42 (1988)……………………………………...……………….….......vi

Wilkinson vs. Dotson,544 U.S. 74(2005)……………………………….…………….…....3,9

Federal Statute's

28 USC §§ 1343………………………………………………………………….……...…….…ii

28 USC §1391(b)…………………………………………………………………….……..….…ii

28 USC §2201………………………………………………………………………………..…....ii

42 USC § 1983……………………………………………………………………….……….....ii,v

**Table of Content's**
**Continued**

**Pages**

State Statute's

76 O.S. § 6…………………………………………………………………………………………11

21 O.S. § 741…………………………………………………………………………..…....v

21 O.S. § 801…………………………………………………………………………..…………....v

21 O.S. § 1303…………………………………………………………………………....v

21 O.S. § 1431…………………………………………………………………………....v

22 O.S.§ 982………………………………………………………………………….…………1

22 O.S. §§ (2013) 1371.1- 1373.7et seq……………………………………………..…..1,2,3,5,6

22 O.S. §§ 1372(C) (1) (3) et seq……………………………………………………….1,6,7

D.C. Code Ann § 22-4134(d)………………………………………………...............…..…….…..6

Haw.Rev.stat. § 13-4240…………………………………………………………….…………6

CONSTITUTIONAL AUTHORITY

Fourteenth Amendment.....................................................................................................................14

Other authority(s)

Jail house Informant testimony and/or cooperating witness, Ctr. On Wrongful
Convictions, Nw. Univ. Sch. of Law, The Snitch System 3 (2005)………………………………..ix

PREVIOUS FEDERAL CIVIL ACTIONS OR APPEALS

The plaintiff has not filed any other actions in Federal Court for a Civil Rights Complaint under **42 U.S.C.A § 1983** addressing these issues.

**Table of Content's**
**Continued**

Pages

THE PARTIES TO THIS COMPLAINT

A. The plaintiff, Ryan K. Smith, #643298, is a state prisoner, who resides at
the Lexington Correctional Facility, Lexington. Oklahoma. 73051.

B. The defendant, Steve Kunzweiler, District Attorney for Tulsa County, State
of Oklahoma, was working under color of state law when the allegations arose.
And is sued in his individual and official capacity. **West v. Atkins**, 487 U.S. 42 (1988).
The Defendant is a Resident of the State of Oklahoma.[1]

### STATEMENT OF THE CASE

The plaintiff Ryan **K. Smith,** was tried by Jury and convicted of Robbery with a Firearm Count-1 (21 O.S.§ 801) Burglary First Degree Count-2 (21 O.S. § 1431) Kidnapping (21 O.S. § 741) Count-12 Kidnapping (21 O.S. § 741) Count-13 Kidnapping (21 O.S. § 741) Count-14 Robbery with a Firearm (21 O.S. § 801) Count-15 Robbery with a Firearm (21 O.S. § 801) Count-16 Assault while Masked or Disguised (21 O.S. § 1303) Count-17 In the District court of Tulsa County Case no. Cf-2010-2554. The Trial Judge sentence the plaintiff to the following: Count-1 20 years C.C, Count-2 20 years C.C., Count-4 10years probation C.S. to Count-1, Count-12 10years probation C.C. to Count-4, Count-13 10years probation C.C. to Count-12, Count-15 25 years C.S., Count-16 C.C. to Count-15 Count-17 10 years' probation C.S. to Count-4.

---

[1] Fed.R.Civ.P.8(a)(2) only requires a short and plain statement of the claim showing that the pleader is entitled to relief;

## Table of Content's
## Continued

Pages

## STATEMENT OF THE FACTS

On 06-20-2010 at about 2230hrs Stephen Rodolf, Christopher Gentile, and Joseph Gentile were

Victims of a home invasion robbery while at 2411 Owasso Place (Tulsa, Ok, Tulsa County).

Mr. Rodolf was expecting guests (Christopher and Joseph Gentile), so he left his garage door open.

Upon hearing the door to the garage open he walked to the garage to greet his friends. Mr. Rodolf

was met by three black males wearing ski masks and holding pistols. Mr. Rodolf was forced to the

ground by one of the robbers and a gun was placed to the back of his head. The other two robbers

ransacked the house. The robbers demanded money and the combination to Rodolf's gun safe.

Rodolf gave the suspects the combination and directed the suspects to his wallet. Ten minutes into

the robbery Christopher and Joseph Gentile arrived. They were met by the robbers. Christopher

was pistol whipped and Joseph's life was threatened by one of the robbers to gain the compliance

of Christopher. That both Joseph Gentile and Stephen Rodolf were bound and taken to the

bathroom. Christopher Gentile remained with the suspects as they looked through the kitchen for

duct tape to bind him. The robbers eventually used Christopher's belt. Before they fled the robbers

stole wallets, Rodolf's Lexus (Which was parked in the garage), many firearms, and large amounts

of ammunition. The Tulsa police were called to the crime scene and detectives process the scene

and collect physical evidence. approximately (18) days after the robbery On 07-07-10 Robert

Yerton the (Tulsa police lab latent print expert) was able to match a latent print from a steak knife

touched by one of the suspects. The print matched to William Harley

## Table of Content's
## Continued

Tottress TPD #191673.[2] The only person to implicate the plaintiff in the crimes charge was Eugena

Shantell Davis who was the sister to defendant W. Tottress  she named the plaintiff and his brother

Byron Smith as the other two suspects in the case[3] On January 1st 2010 the plaintiff  appeared in

the Tulsa county court for arraignment and  because the plaintiff was unable to afford counsel he

was appointed a public defense attorney Bryain Rail to represent him, however due to a conflict

of interest attorney Bryain was allowed to remove himself from the case,[4]

### COURT PROCEDURES BEFORE JURY TRIAL

Before Jury trial the plaintiff new attorney told the plaintiff based on the discovery the states

fingerprint expert R.Yerton was going to testify that the latent fingerprint taken off the mojo

magazine and off the table and/or glass table top was going to match to the plaintiff fingerprints

---

[2] A warrant was issued for W.Tottress who was later arrested after being pull over driving his car. Items from the robbery was found inside his car. The state filed an information against W. Tottress who was charged with four counts see case no. Cf-10-2554.

[3] During the Preliminary hearing E. Davis recanted her police report statements admitting that she lied on the plaintiff and his brother because she was high on drugs and the Tulsa police detectives was treating to charge in the case, and that she would eventually lose all her children. See P.H. Tr. 9-30-10 & 12-17-10 at 50-59 **amended to Compel Production of Buccal Swab/DNA sample/fingerprints** at line,22-25 in case no. cf-10-2554. The trial court order the defendants and Eugenia Shantell Davis to Provide buccal swab and finger prints to eliminate her as one of the three suspects who enter inside the home, All charges were later drop against E. Davis and defendant Byron Smith.

[4] On September 30th 2010 the Petitioner wrote a letter to the trial Judge explaining  that his case was in Jeopardy because during the preliminary hearing attorney Bryain Rail Identified the Petitioner in front of the witnesses and/ or victim's in the case who would eventually be testifying against the Petitioner and because identification of the three suspects was and issue the Petitioner claim he was prejudice by the in court identification see the Petitioner  sworn affidavit filed March 16th 2011 see, Attorney Christopher M. Gault **Motion to suppress in-court identification** in case no.Cf-2010-2554.

so under the advice of counsel the plaintiff enter a plea of guilty. But see, the plaintiff transcript of

hearing on motion to withdraw plea held on October 28, 2011 in case no. Cf-2010-2554.

### PROCEDURES ON APPEAL AFTER THE PLAINTIFF CONVICTION.

1. On May 25th 2023 the plaintiff filed his first motion for post-conviction DNA testing in Cf-2010-2554 with (sworn affidavit of innocents).

2. On June 5th 2023 the state responded to the plaintiff motion for DNA testing stating they had destroyed all the biological material evidence in the plaintiff case.

3. On June 14th 2023 the plaintiff filed a response brief to the states response to the plaintiff motion requesting first post-conviction DNA testing and motion to dismiss for the destruction of biological material evidence.[5] See criminal docket sheet in Cf-2010-2554.

4. On September 18th 2023 the trial judge denied the plaintiff DNA testing hearing in which the plaintiff argued was and abuse of discretion.

5. On September 26th 2023 the plaintiff filed his petition-in-error. Arguing that the Tulsa police acted in bad faith by destroying his biological evidence Citing, **Arizona vs. youngblood,**108 S.ct 1072 and **Jail house Informant testimony, Ctr. On Wrongful Convictions,** Nw. Univ. Sch. of Law, The Snitch System 3 (2005)[6]

6. The OCCA denied the plaintiff petition-in-error. And that it is from the above ruling the plaintiff now file his civil rights law suit pursuant to **42 U.S.C § 1983.**

---

[5] On June 12th 2023 after plaintiff discovered that his DNA / biological evidence had been destroyed. The plaintiff filed his motion requesting sanctions for the lost and / or destruction of his biological evidence in bad-faith by the Tulsa police department. The plaintiff asked the trail judge to grant a **new trial**, **modification** of his sentence, and / or to **dismiss** his case with prejudice. The trial court never made a ruling upon plaintiff motion for sanctions in which the plaintiff is also arguing was and (Abuse of Discretion).

[6] The third category of evidence that has been consistently identified as a leading cause of wrongful convictions is the testimony of a Jailhouse snitch and/or cooperation witness, the concern over the accuracy and reliability of this testimony is well justified among the first 200 DNA exonerations, 35 innocent people were wrongly convicted based in part on false testimony provided by these "incentivized" government witnesses. A comprehensive study of 111 death row exonerations over a 30-year period found that jailhouse snitch testimony figured prominently in nearly 50% of all death row exoneration. **Ctr. On Wrongful Convictions,** Nw. Univ. Sch. of Law, The Snitch System 3 (2005)

Ground-I:

TRIAL JUDGE **ABUSE OF DISCRETION** BY REFUSING TO SANCTION THE TULSA POLICE DEPARTMENT AND / OR DISTRICT ATTORNEY OFFICE FOR THE **BAD FAITH** DESTRUCTION OF THE PLAINTIFF BIOLOGICAL EVIDENCE WHICH WAS DONE IN VIOLATION OF **22 O.S. § 1372(C)(1)-(3)**. THE VIOLATION PROVES OKLAHOMA FIRST MOTION FOR POST-CONVICTION DNA ACT. IS UNCONSTITUTIONAL AND IN VIOLATION OF THE PLAINTIFF PROCEDURES DUE PROCESS RIGHT WHICH IS PROTECTED BY THE FOURTEENTH AMENDMENT OF THE UNITE STATES CONSTITUTION.

Pursuant to **U.S. vs. Banks**,2023WL109968 (Abuse of discretion) by a trial court is any unreasonable, unconscionable and arbitrary action taken without proper consideration of facts and law pertaining to matter submitted. And / or a judgment or decision by an administrative agency or judge which has no foundation in facts or in law. **In the present case**: The plaintiff was within the eligibility and procedures for post-conviction DNA Testing. **22 O.S. §§ 1373.1-1373.7** et seq. But argues Oklahoma's first motion for post-conviction DNA statute is unconstitutional because it provides an unconstitutional inadequacy to access biological material evidence. Plaintiff also contends that the states procedures for considering his DNA testing request violated **fundamental fairness** due to the trial court **"Abuse of Discretion"** in its refusal to **sanction** the Tulsa police department for their **bad faith** destruction of the plaintiff biological material evidence in violation of **22 O.S. § 1372** et seq. See Oklahoma **biological evidence preservation statute** which reads as follows:

A. A criminal justice agency having possession or custody of biological evidence from a violent felony offense, as defined by **subsection F of Section 982 of Title 22 of the Oklahoma Statutes**, Shall retain and preserve that biological evidence for such period of time as any individual convicted of that crime remains incarcerated.

B. As used in this Section:

1. **"Biological evidence"** means physical evidentiary material originating from the human body from which a nuclear DNA profile or mitochondrial DNA sequence can be obtained or representative or derivative samples of such physical evidentiary material collected by a forensic DNA laboratory; and

2. DNA" Means deoxyribonucleic acid.

C. The criminal justice agency in possession or custody of biological evidence may destroy or otherwise dispose of the biological evidence before the expiration of the period of time described in subsection A of this section only if:

1. The agency **notifies any person who remains incarcerated** in connection with the case. The Oklahoma indigent defense system DNA Forensic Testing Program if still applicable, and any counsel of record or public defender organization for the judicial district in which the judgment of conviction for such person was entered, of:

a. the intention of the agency to destroy the evidence, and

b. the provisions of the DNA forensic Testing Act, if still applicable;

2. No person submits a written objection to the destruction of the biological evidence to the agency within ninety (90) days of receiving notice pursuant to paragraph 1 of this subsection; and

3. No other provision of law requires that such biological evidence be preserved.

The Plaintiff argument is clear that the state of Oklahoma has created an arbitrary statutory scheme which provides an unconstitutional discretionary mechanism rendering the constitutional inadequacy to access biological material evidence suitable for DNA testing. More specifically, the above statute requiring its courts to order DNA testing only if such court finds certain facts including (A) **Reasonable Probability** that the plaintiff would not have been convicted if

**favorable results** had been obtained through DNA testing at the time of the **"original prosecution"** is unconstitutional due to the **bad faith** destruction of the plaintiff biological evidence prior to DNA testing.

### A. "Biological Material Evidence" Did Exit In This Case. However, the Evidence Demonstrating The Chain of Custody Is Insufficient For DNA Testing due to the bad faith destruction of plaintiff biological evidence by the Tulsa police department.[1]

The following facts transpired:

1. On May 25th 2023 the plaintiff filed his first motion for post-conviction DNA testing in Cf-2010-2554 with (sworn affidavit of innocents).[2] The evidence that plaintiff requested to have re-check with newer DNA technology was the evidence allegedly belonging to the plaintiff as stipulated by the state fingerprint expert Robert Yerton to wit:  One mojo magazine off the table and/or glass table top, a safe, and additional items against the plaintiff such as Item #12 Swab "Safe Key Pad", Item #17 Swab Gear Shifter, Item #15 Swab Palm Print, and #30-35 Swab Fingerprints PR# BE6525.

2. On June 5th 2023 the state responded to the plaintiff motion for DNA testing stating they **destroyed** all the biological material evidence in plaintiff case.

3. On June 14th 2023 the plaintiff filed a response brief to the states response to the plaintiff motion requesting first post-conviction DNA testing and motion to dismiss for the destruction of biological material evidence. Citing Arizona vs. youngblood,108 S.ct 1072 See criminal docket sheet Cf-2010-2554

4. On September 18th 2023 the trial judge made its ruling and denied the plaintiff DNA hearing. So did the OCCA in which the plaintiff is now arguing was and **abuse of discretion**.

---

[1] Pursuant to **22 O.S. § 1373.1** Under the "Post-Conviction DNA" act. **"Biological Material"** means the contents of a sexual assault evidence collection kit as well as any item that contains or includes blood, semen, hair, saliva, skin tissue, fingernail scrapings or parings, bone, bodily fluids or other identifiable biological material that was collected as part of the criminal investigation or may reasonably be used to incriminate or exculpate any person for an offense and that may be suitable for forensic DNA testing. This definition applies whether the material was catalogued separately including, but not limited to, on a swab, a slide or on any other evidence.

[2] See **Wilkinson vs. Dotson**, 544 U.S. 74 (2005). Plaintiff is not attacking his conviction, only the inadequacy of access to DNA evidence to demonstrate his innocence with new evidence. see also, **Reed vs. Goertz,** Justice Kavanaugh, writing for the Supreme Court, recently explained: "even though a state-court decision is not reviewable by lower federal courts, a **statute** or **rule** governing the decision may be challenged in a federal action. 143 S.ct 955, 960 (2023).

**B. THE REASON WHY THE TRIAL JUDGE SHOULD HAVE ENFORCE SANCTIONS.**

On September 18th 2023  During the plaintiff DNA hearing defense counsel argued that no one has notified the plaintiff that his **biological material evidence** would be destroyed and there forth prohibited his rights to file a written objection to the destruction of his **biological material evidence** which is a clear violation of the plaintiff procedure due process rights under the **14th amendment** of the united States Constitution.[3] In support of the plaintiff argument, defense counselor submitted mailing post and posting exhibits in case no. **CV-14-00491**. Which reads in part: The affiant is a sergeant of the Tulsa police department and in the month of **May** he served a copy of the notice setting hearing the application filed with the court itemizing all property as disposed of and turning beyond that there is a legal notice that was posted. It shows four names on the second column. None of those names are the plaintiff and there is another affidavit and mailing, public posting. Again, by the sergeant of Tulsa Police Department. This was in July of 2014. And it shows Sean McDaniel and a Salinda Mattingly as the only individuals listed. The plaintiff's

---

[3] A **liberty interest** has been established for plaintiff under **22 O.S. § 1373.5**(A) et seq as "it allows for the vacation of a conviction, or other appropriate relief, upon a showing of favorable DNA test results" and because this statute creates a liberty interest in demonstration innocence with new evidence. The plaintiff procedure right is protected under the **14th amendment** of the United States constitution. See, **United State vs. Rivera,** 900 F.2d 1462 (10th cir.1990) The due process clause of the Fourteenth Amendment prohibits a state form "depriving any person of life, liberty, or property without due process of law. "See also United States Constitution. amend. **XIV, §** 1. Plaintiff here challenges the constitutionality of Oklahoma's post-conviction DNA act, a statute setting forth procedures for post-conviction relief relating to DNA testing while there is no federal constitutional right for a convicted defendant to obtain evidence for post-conviction DNA testing, Oklahoma has statutorily created such a right See, **22 O.S. §§ 1373.1-1373.7** supra. and as a result, procedural due process requires that the state provided procedures be adequate to protect that substantive right. See, **Skinner,** 562 U.S. 525 See also **Dist. Atty's Office for the third Judicial. District vs. Osborne,** 557 U.S. 52,67-69 (2009). To establish a procedural due process claim, plaintiff must allege facts demonstrating (1) a deprivation by the state of a protected interest in life, liberty, or property, and (2) an in-adequate state process See, **Reed vs. Guertz,**598 U.S. 230 (2023).

name is not listed. There is no other service or affidavit of service provided in that case showing

the plaintiff was given notice. Following that page, we have the application for disposition of

unclaimed personal property in case no. **Cv-22-0015**. And then attached to that is a copy of the

court docket which is a printout from (OSCN), which is just there to show that the only service

given was an affidavit of publication and a proof of publication on March 11th and March 30th of

2022. A copy of the affidavit of publication which lists a number of names and in those names the

plaintiff does not appear. See (September 18th 2023 defense counsel argument at Pages 10-11 as

(exhibit-A). The state responded by saying pursuant to **22 O.S. (2013) § 1373.4(3)** in order to

obtain any type of DNA testing, one or more of the items of evidence that convicted person seeks

to have tested still exists. The fact that we have no evidence that has been preserved in this case

and was destroyed the plaintiff can't get DNA testing. And that the Oklahoma statute does not

provide any type of **remedies** for this violation and for this reason and the fact the plaintiff has

enter a plea of **guilty** he should be denied DNA testing. See (September 18th 2023 D.A. arguments

at Pages 17-18 (exhibit-A). Defense counselor responded by saying that Oklahoma DNA statute

does not discriminate against a criminal defendant who enter a plea of guilty, in fact the statute

**§1373.2** states clearly upon a **plea of guilty, not guilty** or **nolo contender** a criminal defendant

can come back at a later date and challenge his or her conviction to prove his innocents and this is

exactly what the plaintiff has done in this case and ask for **sanctions** to be filed against the

Government.[4] The trial Judge overruled the defense counselor request in which the plaintiff is now

---

[4] Defense counsel also provided the court with a sworn affidavit from his defense witness Gary Humor a chief forensic DNA expert from California. Which in the opinion there is a "reasonable likelihood" that the plaintiff would obtain a more probative results with today's newer techniques which includes smaller and more sensitive loci for obtaining DNA trace amounts of samples and that this widespread standard was adopted in 2017. Which is significantly more probative than those previous methods used by the states DNA experts in this case. See (Sep 18th 2023 Gary Humor Tr. testimony at 5-7 (Exhibit-A).

arguing was an "(Abuse of Discretion)". See **Banks**,2023WL109968 **Supra**. The plaintiff also

argues the trial judge had committed another (Abuse of discretion) by ruling that the plaintiff did

not meet the Oklahoma post-conviction DNA (Reasonable Probability) requirement of

§ **1373.4**(A)(1) this comes right after the trial judge had become aware that the destruction of

plaintiff biological evidence was done in **bad faith.** And the destruction of biological evidence

was done by the Tulsa Police Department and in violation of § **1372** et seq[5].

## C. PROOF OF THE TULSA POLICE DEPARTMENT <u>BAD-FAITH</u> HISTORY OF DESTROYING THE PLAINTIFF BIOLOGICAL EVIDENCE.

---

[5] While a growing number of innocence protection laws give courts the broad authority to impose "appropriate sanctions See, **Haw.Rev.Stat.§13-4240** for the destruction of biological evidence. The innocence protection statutes that have been enacted in some jurisdictions prescribe criminal penalties as the sole remedy for the wrongful destruction of biological evidence. See, **D.C. Code Ann § 22-4134(d)** (LexisNexis Supp.2008) (Whoever willfully or maliciously destroy, alters, conceals, or tampers with evidence that is required to be preserved under this section with the intent to (1) impair the integrity of that evidence, (prevent that evidence from being subjected to DNA testing, or (3) prevent the production or use of that evidence in an official proceeding, shall be subject to a fine of $100.000 or imprisoned for not more than 5 years or both".) <u>Even in the absence of an express grant of statutory authority to impose sanctions, courts have the inherent</u> **"supervisory power"** to impose sanction on the government for the wrongful destruction of evidence in criminal cases. see **United States vs. Baca**, 687 F.2d 1356, 1359 (10th Cir. 1982) see also, **United States vs. Loud Hawk**, 628 F.2d 1139,1152 (9th Cir.1979) Prosecutors are ultimately responsible for ensuring that this discoverable evidence is properly preserved and can be produced in court. This obligation extends to law enforcement officers, property clerks, evidence custodians, lab technicians, and all others directly responsible for the storage and retention of evidence. Although the State of Oklahoma DNA statute doesn't have a remedy for its States destruction of evidence in their criminal statute the courts do have the inherent **supervisory power** to impose sanction on the government for the wrongful destruction of evidence in a criminal case. See, **Baca**, 687 F.2d at 1359 Supra. See also **Arizona vs. youngblood,**108 S.ct 1072 severely restricted the constitutional remedies available when evidence is wrongly destroyed by the government. see also, **People vs. Sam's,** 658 P.2d 157 (Colo.1984) holding that in determining sanctions the degree of governmental culpability in causing the loss or destruction of evidence is an appropriated consideration)" See also, **Anna Maria Cowdrey vs. The city of Tulsa and Whitney Allen, Christopher Stout & Anthony Cellino**, case no. 05-CV-461-TCK-PJC at (pages-7,8-10,11,16-17,21-24, exhibit-B). In the case of Anna her defense counselor argued that the Tulsa police department has a long history of falsifying, losing and destroying evidence.

In this case, Defense Counselor was able to go back through those civil claims to see what the city of Tulsa did to destroy the evidence and show this Court that they made no effort to contact **any** of the **individuals** that are required to be contacted. They did not send a notice to any of the individuals. In fact, they published their service by posting in a public newspaper and the newspaper ads that they publish do not even include the plaintiff's name. So, in all cases, this evidence was destroyed without notice and in violation of Oklahoma's law regarding tht these materials be retained so that they could be used for this specific purpose and that is coming from Title **22 O.S. § 1372**. So, your Honor, with permission again, I would ask to submit or stipulate to the records of the court clerk from CV-2014-491 as well as CV-22-151. I have copies of the affidavits of mailing and public posting in both of those cases as a joint exhibit. And I would ask that the Court allow submission of those as evidence that these records were destroyed and not destroyed in compliance with the statute. (Page 8-10 exhibit-A) Defense counselor made an offer of prove as followed: The first part of this exhibit is an affidavit of mailing post and posting in CV-14-00491. The affiant is a sergeant of the Tulsa Police Department and states that in 2014, in **May**, they served a copy of the notice setting hearing the application filed with the court, itemizing all property as disposed was as he said, post it. There is no statement of mailing there on page 4. Turning beyond that, you'll see a copy of the legal notice that was posted. It shows four names on the second column. None of those names are Plaintiff name. On the following page, we have another affidavit and mailing, public posting. Again, sergeant of Tulsa Police Department. This was in July of 2014. If you will go then three more pages beyond that you will see another notice, publisher's affidavit, which shows Sean McDaniel and Salinda Mattingly as the only individuals listed. Plaintiff is not listed. There is no other service or affidavit of service

7

provided in that case whatsoever and nothing to indicate that any notice was given to the Plaintiff by the city of Tulsa. Following that page we have the application for disposition of unclaimed personal property in CV-22-0015. And then attached to that is a copy of the Court's docket which is a printout from OSCN, which is just there to show that the only service given was an affidavit of publication and a proof of publication on March 11th and March 30th of 2022. I have attached to that a final page, a copy of the affidavit of publication which lists a number of names and in those, the plaintiff's name does not appear. So even if they have published notice, they didn't put plaintiff name on it, he would have no way of knowing that this notice pertained to him or the evidence in his case. So, what does that all mean for us? Well, what it means is that the city, in this case, destroyed evidence which it has a legal duty to preserve. A duty to preserve because the state chose to grant right to individuals, like plaintiff, who pled guilty to crimes who later determined that they should and could test the DNA evidence collected to determine their innocence. In this case, we had no DNA evidence inclusively linking plaintiff to the crime. We had three potential pieces of evidence which they could not exclude him. I do find it interesting they were able to fully exclude plaintiff brother who's charged as a codefendant and subsequently dismissed his case. But at the time they could not exclude plaintiff, so he was left knowing that that is something that could potentially be introduced and has been introduced in cases in the past to say it could be him, you cannot exclude him, it also could be him.[6] Had he been able to

---

[6] Additionally, your Honor, as I was going through the record of pleadings, I found something that I think is particularly interesting and important with regards to my client's innocence and his guilt. On the State's Exhibit 1, on the front page, you will see the very top entry and I do have a copy for this Court if he would prefer to see that just because it's a little bit streamlined. The court: if you could just point me to it. I've got everyone's briefs and the exhibits that were attached Defense Counselor: The State's Exhibit 1. It's marked number 1.
The court: You're referring to the firearm, the Sig Sauer Firearm?

test this evidence then he may be conclusively able to establish that no DNA evidence at the scene whatsoever linked him to this crime. That is evidence of innocence. That is evidence of acquittal. The fact that he was there in that house, the eyewitnesses who were there that testified he may have touched numerous things, including a keypad, safe, which was one of the items we'd liked to have tested, and to have it exclude him is to say that he wasn't there doing that at least from a biological evidence perspective. So, it would be extremely material to his case and to his defense to be able to show today with these certain markers in biological testing that

---

Defense Counselor: Yeah, I am. And you will notice that on August 7th of 2011 now my client pled. And I believe it was August 11th ,2011, is when Plaintiff entered a plea of guilty. This indicates that on August 7th, four days before then, the police department recovered one of the Stolen weapons in possession of Antoine Hankins, somebody not named in this suit, not associated with it, and totally unknown to the Plaintiff. They recovered property, the stolen property, in possession of an entirely different individual four days before the plea. And I'm willing to say and I think plaintiff will testify to that, he would never would have entered that plea. If someone had said, by the way we found the evidence in possession of a different person, that's evidence of innocence, is it not? I think that would go very strongly towards a jury to indicate a lack of guilt in this case. So, what do we do in this situation where it's been destroyed? Your Honor, there is precedent when the agency has acted in **bad faith** with spoliation of evidence, that a jury instruction can be given that the evidence is to be presumed in favor of the plaintiff. In this case, because the evidence was wired to be held as not, because that would otherwise take a right from plaintiff which he has at law and because the State is presumed to know or not the State, the city. I apologize to the state for that comment. The city is presumed to know the law and are expected to follow it and they have not. But that is in **bad faith** and that this court I would request to presume that the evidence, if tested, would, like the remaining DNA evidence in this case, come back in favor and exclude plaintiff. That combined with what we see on the State's exhibit-1, finding possession of the materials with Antoine Hankins, is strong evidence that a jury reasonably could find plaintiff not guilty of this crime. And something I omitted to state, but I would ask that for here now, none of the evidence recovered was recovered at plaintiff residence or in his possession. It was recovered at one of the co-defendants but not in plaintiff direct possession So I believe that creates a reasonable probability of innocence, one that a jury could reasonably find not guilty and if presumed, I think, would be reason to grant plaintiff a new trial. So we'd ask that this Court consider approving this motion presuming that the evidence would come back in favor of plaintiff and grant him a new trial on it or in the alternative, if that be too much, to consider doing a modification of his sentence to reflect the evidence and to reflect the loss of his ability to seek post-conviction relief. See, September 18th post-conviction hearing (exhibit-A) and attach exhibits at the end of the brief.

he was not there and present at the scene. That's a marketed change from in the past and what has been done. The state gave these individuals like plaintiff, who pled guilty, but may, in fact, still be innocent. Otherwise, it would be superfluous to even, you know, to even include pleas of guilty in this, So they understand that people may plead guilty and then later, still claiming innocence, realize that they want to try and test and prove they're innocent. And that's exactly what plaintiff is doing here. Unfortunately, his right, a right created by statute, in law, is taken from him. He cannot access, he cannot obtain these materials. He cannot have them tested and as a consequence, he can't prove his innocence because they destroyed materials that they should have or did know because we're presumed with knowledge of the law, so presumed to know that they have a duty to preserve it and then they didn't. Not only did they not preserve it, they plainly failed with regards to notice, not even coming close to providing notice to any of the individuals which the statute specifically requires notice be given. So in doing that, they have not given him the opportunity to pursue an avenue of relief that may in fact have shown his innocence. See **Arizona vs. Youngblood,** 108 S.ct 1072. Many state innocence protection statutes give courts the power the impose appropriate sanctions when biological evidence needed for postconviction DNA testing is wrongly destroyed by the government. Constitutional claims based on wrongful evidence destruction are governed by the virtually insurmountable "bad faith" standard articulated in **Youngblood,** 108 S.ct 1072 supra. The wrongful destruction of DNA evidence in contravention of state innocence protection laws, however, should be governed by the standards used to adjudicate other "access to evidence" violations in criminal cases, including disclosures mandated by the clues of criminal procedure, in applying this analysis to the wrongful destruction of evidence needed for postconviction DNA testing, courts should give due weight to

the exclusive power of DNA evidence to discredit other forms of evidence and prove identity to

a scientific certainty. Further, in evaluating the strength of the government's evidence at trial,

courts must carefully scrutinize guilt determinations based largely or exclusively on evidence that

has been the predominate cause of wrongful convictions, including stranger eyewitness

identifications, non-DNA forensic evidence, uncorroborated confessions, and jailhouse informant

testimony. Applying these critical lessons learned from over 200 exonerations to the sanction's

determination, appropriate sanctions for the wrongful destruction of DNA evidence include a

sentence **reduction, a new trial, or dismissal.** <u>The plaintiff is not attacking his conviction, only

the inadequacy of access to DNA evidence to demonstrate his innocence with new evidence.</u> See

**Dotson**, 544 U.S. 74 (2005). Supra see also, **Goertz**,143 S. ct 955 Supra.

## D. THE TULSA POLICE DEPARTMENT HISTORY OF DESTROYING AND / OR MISHANDLING CIVILIANS' DNA / EVIDENCE INSIDE THEIR PROPERTY ROOM.

In the case of **Anna Maria Cowdrey vs. The City of Tulsa and Whitney Allen, Christopher Stout and Anthony cellino** the plaintiff filed a trial brief in case no. 05-CV-461-TCK-PJC. (exhibit-B) And also, and amended complaint which contains counts for: Malicious prosecution; Abuse of process; Deprivation of constitutional rights & Malicious wrong, **76 O.S. § 6**; intentional infliction of Emotional Distress; Negligent Hiring, Supervision & Retention: Tortious interference with employment and intentional misconduct causing harm.

The Facts of Anna Maria Cowdrey case.

Cowdrey was a Tulsa Police Officer for 14 years. She received commendation, good performance ratings and was described as doing an excellent job, a promising officer and a good detective. In April, 2003, Cowdrey was working in the Tulsa Police Property room when allegations arose about missing money and items. A police report was completed that listed nine

11

(9) suspects, including: Sgt. Whitney Allen (Property Room Supervisor), Cpl. Tracy Clark, Anna

Cowdrey, Bob Kurowski, James Poyner, Todd Henley, Brian Horry, Alan Terry and Scott

McQuirter's. This report was assigned to Detectives Anthony Cellino and Christopher Stout for

investigation. City policy makers over saw, supervised and participated in the investigation and

prosecution of Cowdrey, including Police Chief Dave Been. The defendants fabricated

inculpating evidence, falsified misleading evidence, concealed, manipulated, mis-characterized

and misrepresented exculpating evidence concerning Cowdrey.

A. Fingerprints Evidence

1. "Neither Cowdrey or her criminal defense attorney were aware that her fingerprint examination results were actually negative", the results were represented to them as "inconclusive" throughout the criminal prosecution.

2. Defendants police officers admit they were aware that Cowdrey's finger print results were "negative". But, did not report Cowdrey's negative results to the preliminary court. Instead, defendant's police and prosecution reports stated only the finger print results were negative "to the known finger prints of the property room personal", without mentioning Cowdrey's name;

3. But, this same report (and all other prosecution and Supplemental reports) singles out Cowdrey by name to state Fingerprint Examiner Yerton advised Cellino: "He was able to eliminate all property room personnel as suspects except officer Anna Cowdrey." This was a wholly false representation to the preliminary court, Cowdrey's criminal defense attorney and Cowrey;

4. Further down the same page of the report, Stout and Cellino swore to the preliminary court that "the fingerprint examination of Anna Cowdrey's prints and the prints found on the envelopes were inconclusive."

5. No explanation or "clue "could be given by anyone why Stout and Cellino reported Cowdrey's fingerprint results as "inconclusive".

6. Police Chief Dave Been testified that "inconclusive" meant Cowdrey could not be ruled out, as were other property room personnel with this finger print evidence. "inconclusive" left Cowdrey "dangling".

7. Police Chief Dave been testified that early on the investigation narrowed down to Cowdrey based on initials and finger print evidence. Testimony also exists that the fingerprint evidence was useful; very important; "negative" results would have helped Cowdery; it would have taken some light off her, Chief Been would have liked to have known in April or May, 2003, that the

12

results were "negative" before the thing took off any more; Chief been does not think its alright that Stout swore to the preliminary court that the finger print exam was "inconclusive" when it was "negative".

### B. Post-it Note

Neither Cowdrey or her criminal defense attorney knew or were aware that a post-it note containing her work computer access code had been found on or near her property room computer or discussed by the investigators, Stout and Cellino, until discovery efforts in this civil case. Cowdrey's work computer access code was found on a post-it note near the computer she used in the property room. Testimony exists that.

1. The post-it note was important evidence and it would have helped exonerate Cowdrey from criminal charges;

2. The existence of the Post-note was not mentioned in any of Stout or Cellino's reports, Supplemental or prosecution reports;

3. The post -it note was not mentioned at preliminary hearing, the preliminary hearing court did not hear or learn about the post-it note;

### C. Evidence Hidden in Desk

Neither Cowdrey or her criminal defense attorney knew or were aware that pages were missing from a property room inventory list used to prosecute her. Further, they were unaware that the original of this inventory list (with all the pages) was not logged in as evidence and was hidden.

Testimony exists that:

1. Whitney Allen kept the original inventory list in her desk prior to and during **Preliminary hearing**, then given to Tracy Clark to put in her desk;

2. The procedure was not followed regarding the inventory list, evidence was hidden and it caused Cpl. Clark and Sgt. Holman (internal Affairs) concern;

3. This inventory list was important evidence, it linked Cowdrey to the missing items she was prosecuted on;

4. Sgt. Cellino did not give Cowdrey or her criminal defense attorney the complete inventory list and does not know how they would have gotten a copy;

13

5. Chief Dave Been's alarm bells went off" when he first learned this evidence had been locked in a desk drawer;

D.  Missing Vault Keys

The key to the property room vault went missing **about 3 to 6 months before Cowdrey was**

**accused of any wrong doing** in the property room. Defendant Whitney Allen lost the vault key

and that meant that each individual listed as a suspect (property room personnel) had free access

to the monies kept in the vault. Testimony exists that:

1. Even though Cowdrey was accused of taking money from the vault, Whitney Allen did not tell the preliminary hearing court that the vault key had been missing for some time;

2. According to Whitney Allen, the other property room personnel / suspects had access to the vault and security doors leading to it;

E. Condition of Tulsa Police Department property room.

The poor condition of the police property room was concealed by defendant Whitney Allen.

Cellino and Stout ignored Cowdrey's repeated efforts to inform them of the condition of the

property room before and after she was charged with crime(s) related to the property room.

The preliminary hearing judge was misled by the defendants (to this lawsuit) to believe that it was

significant Cowdrey's hand writing was on a series of receipts. In fact, due to the very nature of

her job in the property room and the **poor conditions** of the **property room**, Cowdrey's hand

writing was on many thousands of receipts. The property room conditions were such that

Cowdrey's hand writing on any one or more receipts did not mean she had handled the item(s).

The defendants acted to conceal and mislead as to the actual property room conditions, and thus

"procedures" in place, in an improper effort to harm Cowdrey. Testimony exists that:

1. Whitney Allen led Stout and Cellino to believe that property room was performing its job and

she could find what she needed in it. She did not inform them of her 8/01 and 8/02 Memos stating

she couldn't confirm what was actually in the property room;

14

2. Both 8/01 and 8/02 memos would have been important so persons knew Allen could not

  as certain what cash was in the property room.

Although criminal charges against Cowdrey were latter drop the fact remained that the property

room officers could not confirm what was actually in the property room due to the **poor conditions**

and the fact the defendants acted to **conceal** and **mislead** their department and / or the courts to

the actual property room conditions, proves **bad-faith**.  And the fact when Chief Dave Been's

became aware of the property room poor conditions, he did not place proper procedures to protect

the public and / or future criminal cases such as the one now before this Honorable Court. This

proves **bad-faith** See (Anna trial brief at 1-6 case no. 05-CV-461-TCK-PJC exhibit-B) See also

**Baca**,687 F.2d at 1359 supra. Compare with, **Sam's** 658 P.2d 157 supra.


### Conclusion

By the above argument and authorities, the plaintiff prays that this Honorable court will **dismiss** the case with prejudice and / or **modify** the sentence or in the alternative reverse and remand the case for a new trial.

### Exhaustion of State Court remedies

Plaintiff has sought relief in the state courts to protect the plaintiff 14th Amendment United States Constitutional right with that relief being denied. No other remedy exists at law to access the biological evidence.

### Certification and closing

 I, Ryan K. Smith certify to the best of my knowledge, information, and belief this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous have evidentiary support or , if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4)the Complaint otherwise complies with the requirements of Rule 11.

### VERIFICATION

I, Ryan K. Smith, State under penalty of Perjury under the laws of Oklahoma that on this 27 day of Aug 2024 that the facts within this instrument and the authenticity of all documents and exhibits included in or attached to the above motion are true and correct to the best of my knowledge and belief.

# CERTIFICATE OF MAILING

I, Ryan K. Smith, hereby certify that a true and correct copy of the foregoing instrument and all exhibit/attachment's in or thereto which this certificate is attached, was served upon the following and below named, by placing the same in a sealed first-class mail on this 21 day of Aug 2024 Postage prepaid, via U.S. postal service to:

**One original** and **copies to:**
United States District Clerk's Office
Mark McCartt, Clerk
Page Belcher Federal Bldg. and US Courthouse,
333 W 4th St, Rm #411
Tulsa, Oklahoma. 74103.

**One Copy to:**
Steve Kunzweiler
District Attorney
Tulsa County Court House
500 S. Denver Ave Suite #900
Tulsa, Oklahoma.74103

SIGNATURE
/s/ Ryan Smith
Ryan K. Smith
D.O.C.#643298
Lexington Correctional Center
P.O. Box 260
Lexington, Oklahoma.73051

16