IN THE DISTRICT COURT OF TULSA COUNTY,
STATE OF OKLAHOMA

STATE OF OKLAHOMA,          )
                             )
          PLAINTIFF,   )
V.                        )
                             )
WILLIAM HARLEY TOTTRESS,   )
          DEFENDANT,   )  Case No. CF-2010-2554
AND BYRON LATRELL SMITH,   )
A/K/A "LAZY BONES",      )
          DEFENDANT,   )
AND RYAN K SMITH,        )
          DEFENDANT.   )

(Exhibit - A)

COPY

\* \* \* \* \*
POST-CONVICTION RELIEF HEARING
SEPTEMBER 18, 2023
BEFORE THE HONORABLE DAVID GUTEN
TULSA, OKLAHOMA

A P P E A R A N C E S
FOR THE STATE:

        MS. MEGHAN HILBORN
        Assistant District Attorney
        500 South Denver Avenue
        Suite 900
        Tulsa, Oklahoma  74103

FOR THE DEFENDANT:

        MR. JOHN BOOZER
        Attorney at law
        512 NW 12th Street
        Oklahoma City, Oklahoma 73103

DISTRICT COURT
FILED
OCT 16 2023
DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

Reported By:
Kylie Mayes
Provisional Court Reporter
Tulsa County Courthouse
500 South Denver Avenue, Room 412
Tulsa, Oklahoma  74103

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1

## E X H I B I T S

2

| NO. | DESCRIPTION | ADMITTED |
|-----|-------------|----------|
| Defense Exhibit Number 1 | Affidavit by Gary Harmor | 5 |
| Defense Exhibit Number 2 | Affidavits of mailing and public posting | 9 |

3

4

5

6

## E X H I B I T S

7

| NO. | DESCRIPTION | OFFERED |
|-----|-------------|---------|
| Defense Exhibit Number 3 | Tulsa lab reports | 23 |

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1

2          THE COURT:  We are on the record, Case No.

3   CF-2010-2554, State of Oklahoma vs. Ryan K Smith.

4   Matter comes on today for post-conviction DNA hearing.

5   State is present, represented by Ms. Meghan Hilborn.

6   The Defendant, Mr. Smith -- I guess he would be the

7   Petitioner in this matter -- he is appearing by video

8   at the Department of Corrections.  He is currently in

9   custody and he is represented by Mr. John Boozer, who

10  is present here in the courtroom.

11          Mr. Boozer, this being your petition, you may

12  begin.

13          MR. BOOZER:  Thank you, Your Honor.

14          THE COURT:  And, actually, let me inform the

15  parties of a couple of things.  Because this is video,

16  you're welcome to stay seated at the table.  If you'll

17  move the microphone closer to you so that your client

18  will be able to hear you.

19          Ms. Hilborn, same for you.  If you have any

20  objections that need to be raised.

21          There is about a half second delay on the

22  video itself, so if we're asking any questions of Mr.

23  Smith or anybody else, if you'll just give them a

24  little bit of a break in between question and answer

25  so that we can make sure it's recorded properly and

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1          then we go from there.

2                    Go ahead, Mr. Boozer.

3                    MR. BOOZER:  Thank you, Your Honor.  Okay.

4          So, Your Honor, the Defendant, or Petitioner, in this

5          case has filed a motion for post-conviction DNA

6          testing.  Of that, there are a number of items that

7          were provided in State's Exhibit Number 5 that showed

8          DNA evidence was collected from the scene and was

9          tested at the time.  With the exception of a few

10         items, most -- everything that was tested appears to

11         have excluded the Defendant.  However, there were

12         three items which are important to the basis and the

13         facts of this case which could not exclude.

14                    He was charged with a robbery and breaking in

15         and stealing guns and money and some other things.

16         One of those items was -- and a car.  One of those

17         items was the keypad on -- on the safe.  DNA was

18         taken.  It was un- -- it came from an unknown male

19         individual.  They were unable to exclude him.  The

20         other was a -- the car steering wheel for the vehicle

21         that was stolen.  They were unable to exclude him.

22                    So in support of this motion, we have

23         consulted with a number of experts.  And just for the

24         Court and for the record, I will say I have consulted

25         with as many experts as I could find in this state

```
 1   that may be able to come and testify.  I know I've

 2   spoken with at least 10 different individuals.  Of the

 3   individuals that were -- and spoken with OIDS as well.

 4         The individual experts that are in this state

 5   were unable to help us or do any testing either due to

 6   conflicts or to other issues.  That included some

 7   peop- -- persons who were retired from their position,

 8   so I was able to contact on their cell phones.  So I

 9   was able to find an expert in the state of California

10   who was able to review some of the lab reports and the

11   evidence and to provide an opinion for this motion.

12         And with that, I'd ask that I be able to

13   submit this affidavit in -- in furtherance of that.

14         THE COURT:  State?

15         MS. HILBORN:  No objection, Judge.

16         THE COURT:  All right.

17         MR. BOOZER:  Your Honor, can I approach and

18   provide the copy of that affidavit for you?

19         THE COURT:  You may.  If you hand it to my

20   clerk, we'll mark this as Defense Exhibit Number 1.

21   I'm just going to write it on here at the bottom.

22         MR. BOOZER:  Sure.  And, Your Honor, I won't

23   read this to the Court, but I will summarize if the

24   Court will permit me to publish.

25         THE COURT:  By all means.
```

1          ·       MR. BOOZER:  In general, it -- the affidavit
2    is by Gary Humor -- Harmor, I'm sorry.  He's a
3    laboratory director and chief forensic DNA Ana- --
4    Analyst for the Serological Research Institute and
5    certified by the Texas Forensics Science Commission
6    and has a number of other honors and expertise
7    including publishing of papers, teaching of classes,
8    and -- and providing expert analysis in forensic
9    serology and forensic DNA in hundreds of cases in 21
10   states including 19 counties in California alone, as
11   well as federal and military courts.

12          He was able to review the reports that were
13   from the Tulsa -- city of Tulsa's lab in this case.
14   And in doing so, he was able to note that in 2010
15   testing used was called autosomal STR kit, called
16   PowerPlex 16 kit.  Despite this not being provided, he
17   was able to determine it was provided by the Promega
18   Corporation and it contained 13 FBI core loci, which
19   are used to identify the individual for the DNA.

20          He also testifies that there are new
21   techniques that are used to conduct the testing today
22   than were used in that time in 2010.  In fact, he
23   states that the method of preparing DNA shifted from
24   this manual preparation to a more efficient automated
25   magnetic and extraction methods that increased the

1  recovery of DNA from low level samples.

2          In 2017, the FBI mandated that forensic

3  testing laboratories use 20 loci for casework DNA

4  testing.  So that is greater than the 13 that were

5  used at the time in 2010.  And that now the

6  manufacturers comply by producing different and better

7  kits for it that would comply with today's standards

8  for DNA testing.  It does increase the ability of

9  protecting and typing trace amounts of DNA as is

10  typically found in touch DNA evidence samples.

11          He indicates that there is a reasonable

12  likelihood that we would obtain more probative results

13  and that today's techniques might look at 24 different

14  biological markers to determine identity which

15  includes smaller, more sensitive loci for obtaining

16  types from trace amounts of samples and that this

17  widespread standard was adopted in 2017 and is

18  significantly more probative than those previous

19  methods used.

20          These current methods provide more

21  discriminating results including the possibility of

22  excluding with certainty Ryan Smith from all DNA

23  evidence collected at the scene.  And he -- he

24  acknowledges as a consequence these methods could

25  implicate an entirely different individual for the

1   crime.

2           So based on this affidavit, Your Honor, I

3   would submit that -- that there are new techniques

4   that are available than were used in 2010 and if those

5   new techniques were applied to the DNA evidence in

6   this case it would give a more -- there's a reasonable

7   likelihood a more probative results that could be

8   obtained from testing of these materials.  So turning

9   to those materials.  As I mentioned, there were a few

10  different things that -- that failed to exclude my

11  client from -- from the DNA evidence in this case.

12          Unfortunately, it appears that in 2014 and

13  2022 the city of Tulsa destroyed all DNA evidence

14  relating to Mr. Smith's case.  They did so -- this was

15  disclosed in the State's response.  They did so

16  despite the fact that state law requires that they

17  maintain and hold these specific pieces of biological

18  evidence so that they, in fact, could be used for this

19  testing.  By law, they're only allowed to dispose and

20  destroy these samples if they give notice to the

21  Defendant, to the Defendant's attorney, and OIDS.

22          In this case, I was able to go back through

23  those civil claims what the city of Tulsa did to

24  destroy the evidence and show this Court that they

25  made no effort to contact any of the individuals that

1    are required to be contacted.  They did not send a

2    notice to any of the individuals.  In fact, they

3    published their service by posting in a public

4    newspaper and the newspaper ads that they publish do

5    not even include Mr. Smith's name.

6          So in all cases, this evidence was destroyed

7    without notice and in violation of Oklahoma's law

8    regarding that these materials be retained so that

9    they could be used for this specific purpose and that

10   is coming from Title 22 O.S. 1372.

11         So, Your Honor, with permission again, I

12   would ask to submit or stipulate to the records of the

13   court clerk from CV-2014-491 as well as CV-22-151.  I

14   have copies of the affidavits of mailing and public

15   posting in both of those cases as a joint exhibit.

16   And I would ask that the Court allow submission of

17   those as evidence that these records were destroyed

18   and not destroyed in compliance with the statute.

19         THE COURT:  State?

20         MS. HILBORN:  May I have one moment to look

21   at this affidavit, Judge?

22         THE COURT:  You may.

23         MS. HILBORN:  No objection, Judge.

24         THE COURT:  All right.  We will mark these as

25   Defense Exhibit Number 2.

1    Do you have a copy for the Court, Mr. Boozer?

2    MR. BOOZER:  I do, Your Honor.  Thank you.

3    May I approach?

4    THE COURT:  You may.

5    And I will mark on the bottom of these as

6    Defendant's 2.

7    MR. BOOZER:  Thank you, Your Honor.  May I

8    have permission to publish for the record?

9    THE COURT:  You may.

10   MR. BOOZER:  Thank you, Your Honor.  The

11   first -- first part of this exhibit is an affidavit of

12   mailing post and posting in CV-14-00491.  The affiant

13   is a sergeant of the Tulsa Police Department and

14   states that in 2014, in May, they served a copy of the

15   notice setting hearing the application filed with the

16   court, itemizing all property as disposed was -- as he

17   said, post it.  There is no statement of mailing there

18   on page 4.

19   Turning beyond that, you'll see a copy of the

20   legal notice that was posted.  It shows four names on

21   the second column.  None of those names are Mr. Ryan

22   Smith's name.

23   On the following page, we have another

24   affidavit and mailing, public posting.  Again,

25   sergeant of Tulsa Police Department.  This was in July

1    of 2014.

2           If you will go then three more pages beyond

3    that you will see another notice, publisher's

4    affidavit, which shows Sean McDaniel (phonetic) and a

5    Salinda Mattingly (phonetic) as the only individuals

6    listed.  Ryan Smith is not listed.  There is no other

7    service or affidavit of service provided in that case

8    whatsoever and nothing to indicate that any notice was

9    given to Ryan Smith by the city of Tulsa.

10          Following that page we have the application

11   for disposition of unclaimed personal property in

12   CV-22-0015.  And then attached to that is a copy of

13   the Court's docket which is a printout from OSCN,

14   which is just there to show that the only service

15   given was an affidavit of publication and a proof of

16   publication on March 11th and March 30th of 2022.

17          I have attached to that a final page, a copy

18   of the affidavit of publication which lists a number

19   of names and in those, the name Ryan Smith does not

20   appear.  So even if they have published notice, they

21   didn't put Mr. Smith's name on it, he would have no

22   way of knowing that this notice pertained to him or

23   the evidence in his case.

24          So what does that all mean for us?  Well,

25   what it means is that the st- -- the city, in this

1   case, destroyed evidence which it has a legal duty to

2   preserve.  A duty to preserve because the state chose

3   to grant rights to individuals, like Mr. Smith, who

4   pled guilty to crimes who later determined that they

5   should and could test the DNA evidence collected to

6   determine their innocence.

7         In this case, we had no DNA evidence

8   inclusively linking Mr. Smith to the crime.  We had

9   three potential pieces of evidence which they could

10  not exclude him.  I do find it interesting they were

11  able to fully exclude Mr. Smith's brother who's

12  charged as a codefendant and subsequently dismissed

13  his case.  But at the time they could not exclude Mr.

14  Smith, so he was left knowing that that is something

15  that could potentially be introduced and has been

16  introduced in cases in the past to say it could be

17  him, you cannot exclude him, it also could be him.

18        Had he been able to test this evidence then

19  he may be conclusively able to establish that no DNA

20  evidence at the scene whatsoever linked him to this

21  crime.  That is evidence of innocence.  That is

22  evidence of acquittal.  The fact that he was there in

23  that house, the eyewitnesses who were there that

24  testified he may have touched numerous things,

25  including a keypad safe, which was one of the items

1   we'd liked to have tested, and to have it exclude him

2   is to say that he wasn't there doing that at least

3   from a biological evidence perspective.

4          So it would be extremely material to his case

5   and to his defense to be able to show today with these

6   certain markers in biological testing that he was not

7   there and present in (verbatim) the scene.  That's a

8   marketed change from in the past and what has been

9   done.

10          And so the State sought out to create a

11   (indiscernible).  They gave these individuals like Mr.

12   Smith, who have pled guilty - so the State understands

13   by allowing this for people who have pled guilty that

14   some people may plead guilty, but may, in fact, still

15   be innocent.  Otherwise, it would be superfluous to

16   even, you know, to even include pleas of guilty in

17   this.  So they understand that people may plead guilty

18   and then later, still claiming innocence, realize that

19   they want to try and test and prove they're innocent.

20          And that's exactly what Mr. Smith is doing

21   here.  Unfortunately, his right, a right created by

22   statute, (indiscernible) in law, is taken from him.

23          He cannot access, he cannot obtain these

24   materials.  He cannot have them tested and as a

25   consequence, he can't prove his innocence because they

1    destroyed materials that they should have known or did
2    know because we're presumed with knowledge of the law,
3    so presumed to know that they have a duty to preserve
4    it and then they didn't.  Not only did they not
5    preserve it, they plainly failed with regards to
6    notice, not even coming close to providing notice to
7    any of the individuals which the statute specifically
8    requires notice be given.
9           So in doing that, they have -- they have not
10   given him the opportunity to pursue an avenue of
11   relief that may in fact have shown his innocence.
12          Additionally, Your Honor, as I was going
13   through the record of pleadings, I found something
14   that I think is particularly interesting and important
15   with regards to my client's innocence and his guilt.
16   On the State's Exhibit 1, on the front page, you will
17   see the very top entry and I do have a copy for this
18   Court if he would prefer to see that just because it's
19   a little bit streamlined.
20          THE COURT:  If you could just point me to it.
21   I've got everyone's briefs and the exhibits that were
22   attached --
23          MR. BOOZER:  The State's Exhibit 1.  It's
24   marked number 1.  It's just the very first entry at
25   the top of the page.

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1    THE COURT:  You're referring to the firearm,

2  the Sig Sauer firearm?

3    MR. BOOZER:  Yeah, I am.  And you will notice

4  that on August 7th of 2011 -- now, my client pled.

5  And I believe it was August 11th, 2011, is when Mr.

6  Smith entered a plea of guilty.  This indicates that

7  on August 7th, four days before then, the police

8  department recovered one of the stolen weapons in

9  possession of Antoine Hankins, somebody not named in

10  this suit, not associated with it, and totally unknown

11  to the Defendant.

12    They recovered property, the stolen property,

13  in possession of an entirely different individual four

14  days before the plea.  And I'm willing to say and I

15  think Mr. Smith will testify to that as well, Your

16  Honor, if he had known about that, he would never have

17  entered that plea.  If someone had said, by the way we

18  found the evidence in possession of a different

19  person, that's evidence of innocence, is it not?  I

20  think that that would go very strongly towards a jury

21  to indicate a lack of guilt in this case.

22    So what do we do in this situation where it's

23  been destroyed?  Your Honor, there is precedent when

24  the agency has acted in bad faith with spoliation of

25  evidence, that a jury instruction can be given that

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1  the evidence is to be presumed in favor of the

2  Defendant.  In this case, because the evidence was

3  wired to be held as not, because that would otherwise

4  take a right from Mr. Smith which he has at law and

5  because the State is presumed to know -- or not the

6  State, the city.

7        I apologize to the State for that comment.

8  The city is presumed to know the law and are expected

9  to follow it and they have not.  But that is in bad

10 faith and that this Court I would request to presume

11 that the evidence, if tested, would, like the

12 remaining DNA evidence in this case, come back in

13 favor and exclude Mr. Smith.  That combined with what

14 we see on the State's Exhibit 1, finding possession of

15 the materials with Antoine Hankins, is strong evidence

16 that a jury reasonably could find Mr. Smith not guilty

17 of this crime.

18       And something I -- I omitted to state, but I

19 would ask that -- for here now, none of the evidence

20 recovered was recovered at Mr. Smith's residence or in

21 his possession.  It was recovered at one of the

22 co-defendants', but not in Mr. Smith's direct

23 possession.  So I believe that creates a reasonable

24 probability of innocence, one that a jury could

25 reasonably find not guilty and if presumed, I think,

1    would be reason to grant Mr. Smith a new trial.

2         So we'd ask that this Court consider

3    approving this motion presuming that the evidence

4    would come back in favor of Mr. Smith and grant him a

5    new trial on it or in the alternative, if that be too

6    much, to consider doing a modification of his sentence

7    to reflect the evidence and to reflect the loss of his

8    ability to seek post-conviction relief.

9         And thank you, Your Honor.

10        THE COURT:  All right.  Thank you, Mr.

11   Boozer.

12        State?

13        MS. HILBORN:  Thank you, Judge.  First and

14   foremost, as my motion lays out in response to the

15   Petitioner's request for DNA testing, what is

16   dispositive of this motion is found in 22 O.S. 1373.4

17   in subsection Number 3.  In order to obtain any type

18   of DNA testing, one or more of the items of evidence

19   that convicted person seeks to have tested still

20   exists.

21        The fact that we have no evidence that has

22   been preserved in this case is dispositive of this

23   motion in which he did not get DNA testing.  The

24   statute does not provide any type of remedies that the

25   Petitioner is envisioning during this court date, any

1  types of presumptions that the results would favor

2  him.   When it comes to bad faith or spoliation of

3  evidence, that's an instruction that a jury is

4  instructed upon a jury trial.

5         There is no indication that that type of

6  instruction or that type of presumption should follow

7  in a post-conviction setting when the statute provides

8  DNA testing and very, very specific reasons, none of

9  which are established today.   But let's say, in some

10  world, that we forget that there's no DNA testing in

11  this case and that that property has been destroyed by

12  the city, he does not meet the requirement to show

13  that a reasonable probability that he would not be

14  convicted if the results had been obtained for DNA

15  testing at the time of the original prosecution.

16         This Court is sitting in a unique situation

17  where someone who pled guilty to a factual basis,

18  that's found in his plea of guilty, summary of facts

19  that on June 20th of 2010 in Tulsa County, I did rob

20  Steve Rudolph with a gun, burglarize a house at 2411

21  South Owasso, strike Chris Gentile with a gun and rob

22  him; I also forcibly confirmed -- confined Rudolph and

23  both of the Gentiles; I also robbed Joseph Gentile

24  with a gun; I did all of this acting in concert with

25  William Tottress and wearing a covering over my face.

1    That is a plea of guilty that not only did he go over

2    with his attorney and sign, but is a guilty -- a plea

3    of guilty that was taken by the District Court.

4              The Court is sitting in a unique position

5    where this Petitioner, under oath, signed and declared

6    he was guilty of these crimes and now, 13 years later,

7    is saying that he didn't do it.  I will note that in

8    his request for DNA testing, he gives no articulable

9    reason why he is not guilty of these crimes.

10             MR. BOOZER:  Objection.  State waived those

11   requirements in the last hearing when I specifically

12   requested the opportunity to amend this.

13             THE COURT:  Hang on.  Say that again.

14             MR. BOOZER:  When I -- I specifically

15   requested additional time to amend the motions and to

16   cure any procedural defects and the State said that

17   they would waive those.

18             MS. HILBORN:  I'm not -- I'm not -- I'm not

19   giving issue to procedural defects, I'm talking about

20   the substantive statements he made in his motion.

21             THE COURT:  All right.  Overruled.  She can

22   continue.

23             She's making argument.

24             MS. HILBORN:  The only articulable theory he

25   presents in his motion is that I did not commit the

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1    crimes in which I've been accused of doing.  I'm

2    completely innocent of these crimes and that the

3    fingerprint expert, Robert Yerton (phonetic), lied

4    about the latent fingerprint evidence against me.  I

5    will note that that information is the same

6    information that this person had when he entered his

7    plea of guilty.

8         But not only that, Judge, taking away the

9    fact that we did not have -- if you want to take away

10   the fact that his DNA was found in the Rudolphs' home,

11   in -- in multiple places, that DNA, he was not

12   excluded from, not only that his fingerprints were

13   found in that home, and not only that, but both

14   victims identified him as the perpetrator of these

15   crimes, if -- and that's what this Court has to deal

16   with -- if that type of evidence was submitted to a

17   jury, newer technology to say that DNA would be there

18   or would not be there would not overcome the evidence

19   that connects him to this crime.

20        In this proceeding today, he has not met his

21   burden that a reasonable probability exists that he

22   would not be convicted if favorable results would have

23   been obtained through DNA testing.  Simply stating

24   that evidence -- if the DNA testing would change does

25   not overcome the presumption that we have in this

1    Court for final- -- finality of judgment and

2    sentences.

3         Simply stating that a recovered gun was found

4    in somebody else's possession, which happens in a lot

5    of these cases after the fact, does not show and does

6    not overcome his burden to show that reasonable

7    probability would exist.  His assertions that the city

8    of Tulsa either mishandled or destroyed inadvertently

9    the evidence in this case, which in the State's

10   opinion is a matter for discussion for a different

11   type of case and a different type of courtroom and not

12   before this Court today, does not meet all five

13   criterion that 1374 requires to meet and get and

14   obtain DNA testing.

15        I would ask that this Court make a ruling

16   that he is not entitled to DNA testing first and

17   foremost because there is no evidence in his case to

18   test which ends the analysis in front of this Court.

19        But in addition to that, I would ask that

20   this Court find that he has not met his burden to show

21   that a reasonable probability exists that he would not

22   be convicted if favorable results would have been

23   found in DNA testing because his latent fingerprints

24   were found at the scene and he was identified by both

25   victims at the scene and he hasn't shown that the

1   testing -- the DNA testing that was determined to put

2   him at the scene was wrong.

3          I'd ask that you deny his request for DNA

4   testing today.

5          THE COURT:  Mr. Boozer, any followup?

6          MR. BOOZER:  Yes, Your Honor.  For one, I'd

7   like to just, kind of, start and address the fact that

8   as the State just mentioned, in it's own words, that

9   the DNA was, quote, found all over the place, but in

10  fact, it was just that he was not excluded.  That goes

11  to show the strength of not excluding somebody vs.

12  where a test may actually exclude somebody.  Just by

13  the fact he's not excluded, the State will and -- and

14  Ms. Hilborn's making the argument that that's proof

15  that he was there.

16         I would also address the plea of not

17  guilty -- or the plea of guilty -- apologize.  He made

18  a plea of guilty.  The statute allows for

19  post-conviction DNA relief after someone has made a

20  plea of guilty.  If we make our findings solely upon

21  that basis then there's no point in putting that

22  wording in the statute.  It renders it superfluous.

23         The very fact that the legislature resolved

24  (spot) it to include individuals who have pled guilty

25  indicates they recognize that people may plead guilty

1    even though they may believe and maintain their

2    innocence, but they may do so for other reasons.  And

3    that if that person can and makes an attempt to prove

4    their innocence, that we would actually put that in

5    focus and put the actual ability to prove innocence in

6    focus.  And that's what the Defendant is -- is asking

7    for here.

8              I think it's worth noting he sought to

9    withdraw his plea immediately and -- and

10   post-conviction relief and pursue that -- 'til its --

11   'til its end.  So he has, after his plea, made every

12   effort to undo his mistake and to take that away.

13             Lastly, I'd ask -- and I do have here from

14   the Tulsa city lab reports, one other exhibit.  It is

15   a supplemental report a -- of fingerprints taken.  It

16   is from evidence report BE6525, which is one of the

17   evidence reports I gave to Your Honor.  And I would

18   offer to admit this.  It was a testing of

19   fingerprints.  I offer to admit this to contradict

20   what the State may have stated and to demonstrate that

21   there is at least evidence worthy of impeachment

22   regarding any fingerprints.  This report says that 27

23   fingerprints were taken and there were no matches.

24             So if I may, I'd like to offer this as an

25   additional exhibit and it also contains the remaining

1    of the Tulsa lab reports, city of Tulsa.

2            THE COURT:  State?

3            MS. HILBORN:  I do have an objection to this,

4    Judge, because I don't think that it is a full view of

5    what Mr. Yerton (phonetic) did in this case.  I think

6    that -- I have information through the State's brief

7    of -- in support of sentencing that they filed that

8    fingerprints were found and matched Mr. Smith.  And so

9    I...

10            MR. BOOZER:  We would like to have seen

11    those, Your Honor.

12            THE COURT:  Hang on.  Let her -- let her

13    finish making her argument.

14            MS. HILBORN:  I'm -- I'm just unsure at this

15    moment in time if this was the -- the full

16    supplemental or not and that's -- and I don't think

17    it's relevant for this proceeding, to be honest.

18            THE COURT:  Can I see Defense Exhibit 3?

19            MR. BOOZER:  Yes, Your Honor.

20            THE COURT:  Is it the whole stapled packet

21    that you got here?

22            MR. BOOZER:  It's the whole packet.  Those

23    are all of the laboratory reports from the city of

24    Tulsa that I could find that is turned over.

25            THE COURT:  So the packet itself that you've

1    provided, which is marked on here as State's Exhibit

2    5, even though I know it's Defense Exhibit 3, for

3    purposes of why you're offering it, but I'm assuming

4    because it's labeled as State's 5 this was attached in

5    their brief; is that right?

6           MR. BOOZER:  Yes, Your Honor.  I'm not sure

7    if all of it was or not.  I believe this last page was

8    a double-sided page and so that's where I -- I

9    actually found that as it was on the back of another

10   page.  And so we went through it.  And then my client,

11   through his family members, and I, have also made

12   every effort we can to obtain records from the city of

13   Tulsa.

14          THE COURT:  Okay.

15          MR. BOOZER:  And this is all we can obtain

16   because they've destroyed it.  So we don't know if

17   anything else exists.  I mean, we can sit here and say

18   maybe it does, maybe it doesn't.  But this is what --

19   this is what does exist.  This is what we know exists

20   and this was connected to this case as well.

21          THE COURT:  Well, and the reason I was asking

22   the question is because on the front page of the

23   packet you gave me, which has the State's Exhibit 5

24   sticker on it, indicates a number of different items

25   that were recovered as evidence in the case, number of

1  swabs, looks like they're all swabs that were done

2  from the vehicle in question.  I don't know what

3  vehicle that is or if that vehicle still exists.  I'm

4  presuming not or at least nobody knows if -- where it

5  might be at this time.

6       But there is a number of things in here where

7  no DNA evidence or information was obtained and there

8  is -- looks like 1, 2, 3, 4 possible entries where

9  some DNA information was obtained.  All it says with

10  regards to that towards the end is that it appears to

11  have come from an unknown male individual and that's

12  in a couple of different notations that are in here.

13  So I -- not having any more clarity as to what these

14  27 latent cards are that you're referring to or where

15  they were collected or how they're related, I don't

16  know what that ties into.

17       MR. BOOZER:  So it is my understanding, Your

18  Honor, from linking those to the inventory reports

19  which was provided earlier as -- I'm sorry, I blanked

20  on which exhibit number it was.  The one where the gun

21  was recovered.  Each one of these items is also listed

22  here numerically and per the inventory reports and --

23  and described where the fingerprints were taken and

24  that they were part of this -- this testing, from the

25  fingerprint perspective.

1     I would love to inform the Court more

2  specifically, again, it's somewhat difficult because

3  everything's been destroyed.

4     MS. HILBORN:  Judge, may I -- I -- I looked

5  at my filing that I filed in this case and it does not

6  include this last page.

7     MR. BOOZER:  It doesn't.  It's on the -- it

8  was on the reverse.

9     MS. HILBORN:  And why -- why it caught me in

10  alarms is because I don't attach fingerprints to my

11  responses because that's not responsive to the

12  statute.  What the statute requires is that I provide

13  any type of biological testing that's been done in

14  this case, which I did.  That is State's 5.

15     But this final page of the fingerprints

16  are -- it -- it's not attached to my filing that I

17  filed with the court clerk.  I don't know where this

18  came from.  What I do know is that we did have

19  fingerprint, latent print testing that matched Mr.

20  Smith to the first floor office, on the glass top on

21  the desk, on a magazine on top of the desk.

22     THE COURT:  So what this report tells me --

23  and I'm looking through as I was comparing all this

24  information -- item number 12 on this property list,

25  which is a -- looks like two swabs from the safe

1    keypad in a sealed white paper envelope, DNA evidence

2    was obtained from that safe keypad.  And the results

3    are that Ryan Smith cannot be excluded as a potential

4    contributor.

5           There are a number of other items in here

6    where it says he is excluded as a potential

7    contributor, but that is one where he cannot be

8    excluded as a potential contributor.  And the swab

9    indicated in and of itself, both swab one and swab

10   two, said the item appears to have come from one

11   individual.  Item number 17 on the property list,

12   which are two swabs from the gear shifter, those were

13   placed in a sealed white paper envelope, results of

14   which says Ryan Smith cannot be excluded as a

15   potential contributor of the DNA information obtained

16   from this item.

17          And then he's excluded from a number of other

18   things that are on here.  In fact, I think he may be

19   excluded from all the other items that were there.

20          All right.  Since the State has indicated

21   they don't know where this information came from and

22   has not seen this information, nevertheless, I think

23   it's sufficient for the Court to at least review it.

24   I'll take the argument as it has been laid out, but

25   Defense Exhibit Number 3 will not be admitted into

1    evidence, but the testimony of the evidence -- or the

2    argument, rather, will be considered.

3             Anything else, Mr. Boozer?

4             MR. BOOZER:  No, Your Honor.  That would be

5    all.

6             THE COURT:  All right.

7             Ms. Hilborn, any followup?

8             MS. HILBORN:  Yes, Judge.  And I don't know

9    if this was necessarily done for the record, but I ask

10   that you take judicial notice of the records that are

11   filed in this case.

12            THE COURT:  I will do so.

13            MS. HILBORN:  In particular, the Defense

14   talked about his motion to withdraw his plea of guilty

15   and I would note on both, because he filed two, on

16   October 6th of 2011, the reason he wanted to withdraw

17   his plea of guilty was because his sentence was

18   excessive and beyond what he believed he would get.

19   And then his reason for withdrawing his plea of guilty

20   filed October 28th of 2011, was that because his

21   counsel was not prepared for trial.

22            Neither of these reasons for withdrawing his

23   plea of guilty had anything to do with the facts and

24   the evidence that was going to be put forth in front

25   of a jury in this case.

1    I ask that you would deny his request for DNA

2  testing, Judge.

3    THE COURT: All right. Based upon the

4  evidence that has been presented, let me start first

5  with the affidavit of Mr. Harmor, the individual who

6  was, I guess, either hired or retained, or at least

7  evaluated the testing procedures that were employed

8  back in 2010, 2011. I don't certainly disagree that

9  scientific testing and technology has increased our

10  capabilities as we sit here in 2023 and I would expect

11  that they would do so.

12    However, what Mr. Harbor -- or Harmor, excuse

13  me, does not say is that the results of this test

14  would have come out in any other way other than what

15  it did. What he says is that there is some

16  possibility that more information could be obtained or

17  that the testing outcomes could have given a more --

18  more favorable results or -- I forget the actual

19  language he says in here, but it would have created a

20  more -- a more definitive determination as to who

21  those prints belong to, but he does not say with any

22  certainty that they did not belong to Mr. Smith.

23    The fact of the matter is is that

24  post-conviction relief, the process for

25  post-conviction relief, and the implements that are --

1   are within is a creature of statute and is one that is

2   governed by statute.  In order for Mr. Smith to

3   prevail on a post-conviction relief for DNA testing,

4   there must be one or more items of evidence that he

5   seeks to have tested and those items must still exist.

6           And despite -- well, strike that.  Let me say

7   it this way:  The fact of the matter is is that none

8   of these items, by everyone's assertions, exist today.

9   There are no items left for any DNA testing to occur.

10  Whether that was done correctly or incorrectly is not

11  a matter before this Court nor is appropriate for this

12  Court to make a determination on in terms of the

13  post-conviction relief process.

14          Based upon that, there has not been any

15  specific finding that if this DNA testing were to

16  occur, if the evidence did, in fact, exist, which it

17  does not, but any reasonable probability would exist

18  that he would have or would not have been convicted if

19  favorable results were obtained through DNA testing.

20          The evidence suggests that Mr. Smith entered

21  into a plea of guilty with what appears to be a very

22  specific set of factual -- a very specific factual

23  basis that was included in the Lumpkin form that he

24  knowingly and voluntarily and intelligently waived his

25  rights to trial and entered into that plea.

1          Despite the fact that there were two efforts

2    made to withdraw that plea, the reasons that the State

3    pointed out, correctly, that were included in the

4    motions to withdraw plea had nothing to do with

5    factual or actual innocence.  It had to do with the

6    outcome of the case and the sentence that he received.

7          And so for those reasons, Mr. Smith is denied

8    his request for post-conviction relief.

9          Is there anything further from the State on

10   this matter?

11         MS. HILBORN:  No, Your Honor.

12         THE COURT:  Mr. Boozer, for you?

13         MR. BOOZER:  No, Your Honor.

14         THE COURT:  All right.  We will be off the

15   record.

16              (The proceedings concluded at 11:05 a.m.)

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

STATE OF OKLAHOMA            )
                            ) SS:
COUNTY OF TULSA              )

       I, Kylie Mayes, Provisional Court Reporter in

and for the State of Oklahoma, do hereby certify that

on the `18th day of September, 2023, before the

Honorable David Guten, District Judge, in the District

Court of Tulsa County, Oklahoma, I reported in machine

shorthand the proceedings had and the evidence given

and that the above is a full, true, correct and

complete transcript of the proceedings taken at said

time and place.

       WITNESS MY HAND THIS 16th day of October,

2023.

 

_____
Kylie Mayes
Provisional Court Reporter

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT



*Quality Forensics since 1978*

## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

STATE OF OKLAHOMA, )
)
    Plaintiff, )
)
v. )
)    Case No.  CF-2010-2554
RYAN SMITH, )
)
    Defendant. )

## AFFIDAVIT OF GARY C. HARMOR

    I, Gary C. Harmor *(B. S., ABC-BC, ABC-GKE, ABC-MB)*, being first duly sworn under oath and subject to penalty of perjury, hereby state and attest to the following:

    1.    I am the Laboratory Director, Chief Forensic DNA Analyst of the Serological Research Institute ("SERI") and am also certified by Texas Forensic Science Commission #764. I am a graduate of CSU Sacramento with a Bachelor of Science with Honors in Forensic Science and minors in Chemistry and Biological Science. In 1978, I started SERI with the late Brian Wraxall, where we trained many present-day criminalists, including a few laboratory directors all over the country in serological methods. We spent the next 34 years conducting casework in forensic biology and forensic DNA analysis. I am now SERI's Laboratory Director and a Fellow of the American Board of Criminalistics in Forensic Biology with subspecialties in Forensic Biochemistry and Forensic Molecular Biology. I am a member of the California Association of Criminalists (CAC), the International Society for Forensic Genetics (ISFG), the California Association of Crime Laboratory Directors (CACLD), and the Association of Forensic Quality Assurance Managers (AFQAM). I am qualified as an expert in both forensic serology and forensic DNA and has testified in hundreds of cases in 21 states, including 19 counties in California alone, as well as in federal and military courts. I am experienced in biological screening methods and HLADQα, autosomal STR (Short Tandem Repeat) and YSTR DNA analysis.  My CV is attached hereto (Exhibit A);

    2.    I have reviewed a Laboratory Supplemental Report A, dated 10/28/2020, authored by Johnathan Wilson, Forensic DNA Technical Manager, Lab File Number: 2010-1158 and a Laboratory Supplemental Report B, dated 12/13/2010, authored by Byron C. Smith, Forensic Scientist II of the City of Tulsa Police Department for Lab File number 2010-1158, at the request of the defendant herein;



*Serological Research Institute*
3053 Research Drive, Richmond, CA 94806
510-223-SERI (7374) • www.serological.com

 

3.      The evidence obtained in this case contained DNA evidence from latent fingerprints, commonly called "touch DNA". This evidence was tested in 2010 using an autosomal STR kit called Power Plex 16 made by Promega Corporation. This kit contains the 13 FBI Core Loci (locations amplified for DNA) as well as Penta D and Penta E loci;

4.      The techniques used today are different than those used to conduct testing of the underlying evidence in this case in 2010. The method of preparing the DNA shifted from manual preparation to more efficient automated magnetic bead extraction methods which increased the recovery of DNA from low level samples. In 2017 the FBI mandated that Forensic Testing Laboratories utilize 20 Core Loci for casework DNA testing.   The manufacturer's complied by producing kits with enhanced chemistry for better sensitivity that contain the 20 FBI core loci and additional loci that significantly increased the ability of detecting and typing trace amounts of DNA as is found in touch DNA evidence samples;

5.      If subjected to additional testing using the techniques available today, there is a reasonable likelihood of more probative results;

6.      The STR techniques used today look at 24 different biological markers to determine DNA identity, which include the smaller, more sensitive loci for obtaining types from trace amounts of DNA in samples. This standard was widespread, adopted in 2017, and is significantly more probative than the methods used previously, which reviewed 13 loci markers.  Current methods are capable of providing more discriminating results including the possibility of excluding the defendant, Ryan Smith. As a consequence, an entirely different individual may be inculpated for the crime.

FURTHER AFFIANT SAYETH NOT.

Dated this 15th day of September, 2023.

Gary C. Harmor, B.S.
Serological Research Institute
3053 Research Drive
Richmond, CA 94806-5206
(510) 223-7374

Affidavit of Gary C. Harmor - CF-2010-2554

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate
is attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of Contra Costa

Subscribed and sworn to (or affirmed) before me on this 15th
day of September , 20 23 , by _____
Gary Clayton Harmor
proved to me on the basis of satisfactory evidence to be the
person(s) who appeared before me.

JENNIFER M BOSCHKER
Notary Public - California
Contra Costa County
Commission # 2362559
My Comm. Expires Jun 25, 2025

(Seal)                          Signature _____

Exhibit A

 **SERI**

Serological Research Institute
3053 Research Drive, Richmond, CA 94806
510-223-SERI (7374)

# RESUME OF
# GARY CLAYTON HARMOR

## *EDUCATION*

1974 - 1976
*California State University, Sacramento, CA*
Bachelor of Science with Honors, Forensic Science
Chemistry (29 semester units)
Biological Science (27 semester units)

1972 - 1974
*Sacramento City College, Sacramento, CA*
Associate of Arts in General Education

July, 2010
*Executive Online Mini-MBA in Core Business Principles*
The Satell Center for Executive Education
376 Technology Drive, Malvern, PA

## WORK EXPERIENCE

2012 - Present
Executive Director, President of the Board of Directors

2021- Present
Chief Forensic DNA Analyst

The Chief Forensic DNA Analyst shall be responsible for the completion of assigned laboratory cases and client consultation. A Forensic DNA Analyst shall be responsible for the interpretation of testing results. A Forensic DNA Analyst shall be responsible for using their judgment in the selection and consideration of testing, including selection within allowable ranges and the submission for temporary modification of testing techniques. A Forensic DNA Analyst shall be responsible for the generation of reports and the court testimony of their casework.

2012- 2021
Chief Forensic Serologist

The Chief Forensic Serologist shall be responsible for the completion of assigned laboratory cases and client consultation. A Forensic Serologist shall be responsible for the interpretation of testing results. A Forensic Serologist shall be responsible for using their judgment in the selection and consideration of testing, including selection within allowable ranges and the submission for temporary modification of testing techniques. A Forensic Serologist shall be responsible for the generation of reports and the court testimony of their casework.

# GARY CLAYTON HARMOR

| | |
|---|---|
| *2017 – Present* | Quality Assurance Manager |

Responsible for all aspects of the Quality System for the laboratory under the guidance of the Technical Leader. Maintain and update the Quality Manual. Monitor laboratory practices to verify continuing compliance with policies and procedures. Evaluate instrument calibration and maintenance records. Ensure the validation of new technical procedures. Investigate technical problems, propose remedial actions, and verify their implementation. Administer proficiency testing and evaluate results. Select, train, and evaluate internal audits. Propose corrections and improvements in the quality system. Liaison with ANAB.

*1978 – 2012*
*Forensic Serologist (1978 – 1988)*
*Senior Forensic Serologist (1988 to 2011)*

The Senior Forensic Serologist shall be responsible for the completion of assigned laboratory cases and client consultation. A Forensic Serologist shall be responsible for the interpretation of testing results. A Forensic Serologist shall be responsible for using their judgment in the selection and consideration of testing, including selection within allowable ranges and the submission for temporary modification of testing techniques. A Forensic Serologist shall be responsible for the generation of reports and the court testimony of their casework.

*1977 - 1978*
*Beckman Instruments, Inc. - Anaheim, CA*
Forensic Chemist

Aid in the research and development of advanced electrophoresis blood grouping techniques on dried bloodstains and the transfer of this technology to selected crime laboratory personnel. This work was done under a LEAA grant.

*1976 - 1977*
*University of California, Berkeley, CA*
Staff Research Associate I, Step 2

Aid in the research and development of electrophoresis techniques for the purposes of a population survey of various polymorphic enzymes and proteins. This work was done under a California OCJP grant.

# GARY CLAYTON HARMOR

## CERTIFICATIONS AND AWARDS

Certificate of Merit from the Southern Association of Forensic Scientists, April 30, 1982.

Certificate of Professional Competency in Criminalistics from the California Association of Criminalists, Awarded December 26, 1989, Number 060.

Certificate for General Criminalistics (ABC-GKE) from the American Board of Criminalistics (ABC), Number 0440, expires July 31st 2023.

Certificates of Biochemistry (ABC-BC) and Molecular Biology (ABC-MB), Number 0440, expires July 31st 2028.

Certificate from the Satell Center for Executive Online Mini-MBA® Program in Core Business Principles.  The Satell Center, 376 Technology Drive, Malvern, PA  19355, 1-800-817-8510.  July 2010.

ASCLD/LAB–International, Internal Auditor Training Course, Emeryville, CA; February 2013.

Texas Forensic Science Commission, Forensic Biology/DNA Analysis, License Number 0000764 expires 1/8/2025.

## COURT PRESENTATIONS

**Expert testimony presentations in forensic serology made in excess of five hundred (500) times in Superior Courts of the following states**:  Alaska, Arizona, California, Colorado, Georgia, Illinois, Iowa, Kentucky, Louisiana, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Utah, Wisconsin and Washington.

**Superior Courts in California**: Alameda, Butte, Contra Costa, El Dorado, Fresno, Humboldt, Kern, Los Angeles, Orange, Sacramento, San Bernardino, San Diego, San Francisco, San Joaquin, San Mateo, Santa Clara, Shasta, Solano, Sonoma, Sutter, Tulare, and Ventura Counties.

**Qualified as a DNA expert over three hundred (300) times in Superior Courts of the following states (Approximately 80% Prosecution/Plaintiff and 20% Defense)**:  Alaska, Arizona, California, Colorado, Florida, Georgia, Illinois, Louisiana, Massachusetts, Missouri, Montana, Nevada, New Hampshire, New Mexico, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Texas and Utah.

**Superior Courts in California**:  Alameda, Contra Costa, El Dorado, Fresno, Marin, Napa, Orange, Kern, Los Angeles, Sacramento, San Bernardino, San Diego, San Francisco, San Mateo, Santa Clara, Shasta, Sonoma, Stanislaus and Sutter Counties.
**Federal/Military Courts:** Alabama, California, Illinois, Tennessee, Utah and Virginia.

# GARY CLAYTON HARMOR

**International Courts:** British Columbia, Canada.

*TECHNICAL PRESENTATIONS*

C.A.C. Seminar, Spring 1980: "PGM Subtyping by Conventional Electrophoresis"

C.A.C./N.W.A.F.S Joint Seminar, Fall 1981: "Multisystem Approach to Red Cell Black Population Markers - Group IV"

S.A.F.S. Seminar, Spring 1982: "Multisystem Approach to Red Cell Black Population Markers - Group IV"

C.A.C. Seminar, Spring 1986: "Gm and Km Testing on Bloodstains"

2nd Joint Meeting of the Forensic Science Society and the California Association of Criminalists, July 1997: "Life in a Private Laboratory".

C.A.C. DNA Workshop, May 1998: "Casework Using Capillary Electrophoresis on the 310 Genetic Analyzer™".

Forensic DNA lectures for California Defense Investigators Assoc. San Diego, CA, October 6 and 7, 1995.

Panel member at Perkin-Elmer Applied Biosystems Division - Forensic PCR Technical Training Roundtable Discussions

Guest lecturer on Forensic DNA to a Molecular and Cell Biology Course at the California State University at Sonoma, California on November 23, 1999

California vs. Scott Dyleski: My Experience with the Admissibility of Y-STRs (ABI Y-filer™), California Association of Criminalists, Fall 2007 DNA Workshop, Berkeley, CA, October 16, 2007.

Taking a Bite Out of Crime: DNA analysis of Property Crime Cases, Association of Forensic DNA Analysts and Administrators (AFDAA) Summer 2012, San Antonio, TX, June 28, 2012.

Determination of Reference Sample Genotypes for the HLADQA1 (HLADQα) Locus Using Direct DNA Sequencing of PCR Amplicons, Association of Forensic DNA Analysts and Administrators (AFDAA) Summer 2013, San Antonio, TX, May 30, 2013.

Determination of Reference Sample Genotypes for the HLADQA1 (HLADQα) Locus Using Direct DNA Sequencing of PCR Amplicons, American Academy of Forensic Science, 66th Annual Scientific Meeting, Seattle, WA, February 20th 2014.

# GARY CLAYTON HARMOR

False Confession and CODIS Hits Entwine Two Capital Cases, 25th International Symposium on Human Identification, Phoenix, AZ, October 1st 2014; CAC 2015 Fall Seminar, September 22, 2015, Burlingame, CA; and California Association of Crime Laboratory Directors, Fall Meeting, November 17th 2015, Sacramento, CA.

## OFF SITE TECHNICAL COURSES

Instructor at various Forensic laboratories in semen identification and/or advanced electrophoresis techniques:

Iowa Department of Public Safety, Des Moines, January 1984
Michigan Department of State Police, East Lansing, August 1984
Arizona Department of Public Safety, Phoenix, April 1985
South Carolina Department of Law Enforcement, Columbia, November 1985
Georgia State Bureau of Investigation, Decatur, Georgia, June 1986
Michigan Department of State Police, East Lansing, March 1987
Arizona Department of Public Safety, Phoenix, November 1987
San Diego Police Department, San Diego, September 1988
New York City Police Department, New York, March 1997

## DNA TRAINING AND COURSES

Forensic DNA Seminar, California Association of Crime Laboratory Directors, November 19, 1987, Newport Beach, CA.

Forensic DNA Symposium, California Association of Criminalists, 71st Semiannual Seminar May 21, 1988, Berkeley, CA.

Topics in Molecular Biology Related to Forensic DNA Analysis, July 24-28, 1989
UC Berkeley Extension

Principles of Molecular Biology, Fall 1989, UC Berkeley Extension (X107A)

Principles of Molecular Biology, Spring 1990, UC Berkeley Extension (X107B)

Certificate of Completion for HLADQa Forensic DNA Amplification and Typing Workshop, Cetus Corporation, Forensics PCR Division, August 17, 1990.

Introduction to Genes and Genetics, Fall 1990, UC Berkeley Extension (X143)

The Population Genetics and Statistics Seminar for Forensic Biology, California Association of Criminalists, June 17-19, 1992.

Forensic DNA User Workshop, California Association of Criminalists, May 9 and 10, 1995.

Forensic DNA User Workshop, California Association of Criminalists, May 15, 1996.

Forensic DNA Workshop, 2nd Joint Meeting of the Forensic Science Society and the California

# GARY CLAYTON HARMOR

Association of Criminalists, Harrogate, North Yorkshire, U.K., July 9-12 1997.

Forensic DNA Workshop, 3rd Joint Meeting of the Forensic Science Society and the California Association of Criminalists, Napa, California, May 9, 2000.

Forensic DNA Workshop, "Short Tandem Repeat Analysis Data: Processing Interpretation and Storage", American Academy of Forensic Science, 53rd Annual Meeting, Seattle, WA on February 20, 2001.

Forensic Applications of Y-Chromosome DNA Typing, Symposium, Tennessee Bureau of Investigation, Nashville, TN on May 12, 2003.

FBI DNA Auditor Training, NWAFS Fall Meeting Workshop, Portland, OR, October 15-16, 2003

Applied Biosystems, Inc., HID Genemapper ID v.3.1- Web Ex Training # 751747357, June 14, 2004.
Applied Biosystems, Inc., Future Trends in Forensic DNA Technology 2006 Seminar HID™

University Seminar Series, Berkeley, CA, September 22, 2004.

San Diego District Attorney's Office, "DNA Court Room Training for Criminalists," San Diego, CA, December 2, 2004

Applied Biosystems, Inc., Future Trends in Forensic DNA Technology 2006 Seminar HID™
University Seminar Series, Berkeley, CA, June 13, 2006.

Forensic DNA Workshop, California Association of Criminalists, Berkeley, CA, October 16th 2007

Forensic Training Network, "Forensic STR Data Analysis Using Genemapper," SERI, June 4th 2008, Instructor: Jaime Handlesman

Forensic DNA User Workshop, Fall 2009 Seminar, California Association of Criminalists San Jose, California, October 26th 2009.

Applied Biosystems, Inc., Future Trends in Forensic DNA Technology 2006 Seminar HID™
University Seminar Series, Berkeley, CA, July 20, 2010

21st International Symposium on Human Identification, San Antonio, TX, October 12 and 13, 2010

22nd International Symposium on Human Identification, National Harbor, MD, October 3 thru 6, 2011

# GARY CLAYTON HARMOR

Association of Forensic DNA Analysts and Administrators (AFDAA) Seminar, Summer 2012, San Antonio, TX, June 28 and 29, 2012.

23rd International Symposium on Human Identification, Nashville, TN, October 15 thru 18, 2012

ASCLD/LAB–International, Internal Auditor Training Course, Emeryville, CA; February 5-8, 2013.

Association of Forensic DNA Analysts and Administrators (AFDAA) Seminar, Summer 2013, San Antonio, TX, May 30 and 31, 2013.

American Academy of Forensic Science, 66th Annual Scientific Meeting, Seattle, WA, February 19th to 21st, 2014.

Life Technologies, Inc., HID University, 2014 Future Trends in Forensic DNA Technology, San Francisco, CA, July 23rd 2014.

25th International Symposium on Human Identification, Phoenix, AZ, October 1st 2014.

California Association of Criminalists, 2015 Fall Seminar, Forensic DNA Workshop, September 22, 2015, Burlingame, CA.

California Association of Criminalists, 2016 Fall Seminar, Seratec® Biology Workshop, October 31 2016, Rancho Mirage, CA.

California Association of Criminalists, 2016 Fall Seminar, Forensic DNA Workshop, November 1, 2016, Rancho Mirage, CA.

In-house training for probabilistic genotyping and kinship analysis (Bullet & Brutus) by Kent Harman of Genetic Technologies, Inc. on March 13th 2017.

In-house training for "Casework Application of Probabilistic Genotyping – eDNA/Bullet", by Casseday Baker January 18th 2018.

Workshop #1, "Proposed revisions to the FBI Quality Assurance Standards – DNA", AAFS 70th Annual Scientific Meeting, Seattle, WA, February 19th 2018.

Workshop #13, "Moving from CPI to Probabilistic Genotyping for DNA Mixture Interpretation", AAFS 70th Annual Scientific Meeting, Seattle, WA, February 19th 2018.

"Criminalistics I Seminar", AAFS 70th Annual Scientific Meeting, Seattle, WA, February 22nd & 23rd 2018.

California Association of Crime Laboratory Directors, Conference, May 13th -14th 2019, Oakland, CA.

# GARY CLAYTON HARMOR

Bullet Proof (PG) Workshop, July 10th -11th 2019, Serological Research Institute, Richmond, CA.

International Symposium on Human Identification (ISHI), Virtual Meeting, September 14th – 17th 2020, Serological Research Institute, Richmond, CA.

HID University, Human Identification Solutions virtual conference on May 19-20, 2021, presented by Thermo Fisher Scientific.

International Symposium on Human Identification (ISHI), Virtual Meeting, September 13th – 16th 2021, Serological Research Institute, Richmond, CA.

California Association of Crime Laboratory Directors, Conference, September 20th - 21st 2022, San Jose, CA.

International Symposium on Human Identification (ISHI), Virtual Meeting, October 31st – November 3rd 2022, Serological Research Institute, Richmond, CA.

MPS I: Understanding the Technology and MPS II: Genetic Marker Potential, RTI International and National Institute of Justice, June 12, 2023, Virtual.

MPS III: Bioinformatics, RTI International and National Institute of Justice, June 29, 2023, Virtual.

FIGG and Court Proceedings: Lessons from the Past, Present to Prepare for the Future, Verogen Webinar, July 6, 2023.

## PROFESSIONAL ORGANIZATIONS

California Association of Criminalists (CAC)
Association of Forensic Quality Assurance Managers (AFQAM)
California Association of Crime Laboratory Directors (CACLD)
International Society for Forensic Genetics (ISFG)

## PROFESSIONAL RECOMMENDATIONS

David Hansen, M.S.
Forensic Analytical Sciences, Inc.
3777 Depot Rd., Suite 403
Hayward, CA  94545-2761
(510) 266-8194

Steve Myers, M.S.
California Department of Justice
Bureau of Forensic Services
Jan Bashinski DNA Laboratory
101 West Cutting, Suite 110
Richmond, CA  94804-3300
(510) 620-3300

# GARY CLAYTON HARMOR

## PUBLICATIONS

**"Electrophoresis of Esterase D in Fresh Blood and in Bloodstains on Cellulose Acetate"**, Grunbaum, Harmor, Del Re, Zajac, <u>Journal of Forensic Sciences</u>, Vol. 23, No. 1, January 1978

**"Final Report: Bloodstain Analysis System"**, Wraxall, Bordeaux, Harmor, Walsh, FR2700-101, The Aerospace Corporation, 955 L'Enfant Plaza, S.W., Washington, D.C., 20531, September 1978

**"Final Report: Forensic Serology Workshops"**, Wraxall, Harmor, Provost, Jordon, 78NI-AX-0079, NILE and CJ, U.S. Department of Justice, Washington, D.C., 20531, September 1979

Updated: 9/2023



IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA



CITY OF TULSA, *ex rel.*,
CHUCK JORDAN, Chief of Police,
City of Tulsa, Oklahoma,

                Plaintiff,

-vs-

CERTAIN PROPERTY, *whether
stolen, embezzled or otherwise
obtained, being unknown or
unclaimed,*

                Defendant.

**DISTRICT COURT**
# FILED

MAY 20 2014

**SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA. TULSA COUNTY**

No. CV-2014-00491
Judge Daman Cantrell

SALLY HOWE SMITH
COURT CLERK
2014 MAY 20 PM 2:40

### AFFIDAVIT OF MAILING AND PUBLIC POSTING

STATE OF OKLAHOMA   )
                          ) ss.
COUNTY OF TULSA     )

     COMES NOW Kimberly M. Lee, of lawful age, who being first duly sworn upon her oath,

deposes and says:

     1.    I am a Sergeant of the Tulsa Police Department. I have direct supervisory responsibility

for the operations of the Tulsa Police Department Property Room.

     2.    Postal notice was provided in accordance with Oklahoma statutes, to the known owners

of any property listed with an actual or apparent value in excess of $250.00.

     3.    That on the 2nd day of May 2014, a copy of the *Notice Setting Hearing* setting for

hearing entered herein and the application filed with the court itemizing all property proposed for

disposal was fully posted. Said posting being done at the assigned place for the posting of municipal

notices, and at Tulsa Police Divisions: Riverside, Gilcrease, and Mingo Valley.

     4.    That all items with an actual or apparent value in excess of $500.00 were published in

the Tulsa Business & Legal News May 7, 2014 (Exhibit #1).



D2

Further, affiant saith not.



Kimberly M. Lee
Sergeant, Tulsa Police Department
Property Room Supervisor

Subscribed to and sworn before me this 5ᵗʰ day of May, 2014.

Billie Simmons

Notary Public

My commission expires:

Jan. 10, 2016

My commission number:

12000294

2

# Exhibit 1



# PUBLISHER'S AFFIDAVIT

MAY 12, 2014 SALE

PUBLICATION DATE(S)
05/07/14

CASE NUMBER: CV-14-491/MAY 12, 2014 SALE

AD NO: 00181037

## LEGAL NOTICE

## STATE OF OKLAHOMA
## COUNTY OF Tulsa } SS

I, of lawful age, being duly sworn, am a legal representative of Tulsa Business & Legal News of Tulsa, Oklahoma, a daily newspaper of general circulation in Tulsa, Oklahoma, a newspaper qualified to publish legal notices, advertisements and publications as provided in Section 106 of Title 25, Oklahoma Statutes 1971 and 1982 as amended, and thereafter, and complies with all other requirements of the laws of Oklahoma with reference to legal publications. That said notice, a true copy of which is attached hereto was published in the regular edition of said newspaper during the period and time of publication and not in a supplement, on the ABOVE LISTED DATE(S)

_____
Representative Signature

Subscribed to and sworn to me this 8th day of May, 2014.

Notary Public _____

KATHLEEN A. DRAKE

My commission number: 06000391

My commission expires: January 9, 2018

Customer #: 00013595

Customer: TULSA POLICE DEPARTMENT

Publisher's Fee: 40.60



181037
Published in the Tulsa Business & Legal News, Tulsa, Tulsa County,
Oklahoma, May 7, 2014

NOTICE OF FORFEITURE HEARING OF
UNCLAIMED PROPERTY and/or EVIDENCE
CV-2014-00491

A hearing concerning the forfeiture of unclaimed evidence and/or property to the City of Tulsa Police Department will be held Monday, May 12, 2014, at 9:30 a.m. before the Honorable Judge Daman Cantrell in Room 531 in the Tulsa County Court House, 500 S. Denver, Tulsa, OK.

A list of items subject to forfeiture is available at all Tulsa Police Dept. Patrol Divisions, Detective Division, Headquarters, at 600 Civic Center, the TPD Property Room at 1111 W. 17th St., and the City Clerk Office @ One Tech Center, 175 E. 2nd St. Tulsa, OK.

Evidence and/or property forfeited to the City of Tulsa Police Department as a result of this hearing will be disposed of in accordance with the order of the court. The following owners will have items with a value exceeding $500.00 subject to Forfeiture during listed court date:

| | | |
|---|---|---|
| BG2207 | Wilmer Daniels | Firearm and Cash |
| BG4592 | Stephen Brown | Firearms |
| BA1714 | Clark Davis | Cash |
| BC2119 | Christian Flores | Cash |

DISTRICT COURT
F I L E D

MAY - 9 2014

SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA. TULSA COUNTY







## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

DISTRICT COURT
**F I L E D**

AUG - 5 2014

SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA. TULSA COUNTY

|  |  |  |
|---|---|---|
| CITY OF TULSA, *ex rel.*, | ) | |
| CHUCK JORDAN, Chief of Police, | ) | |
| City of Tulsa, Oklahoma, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| -vs- | ) | No. CV-2014-00491 |
|  | ) | Judge Daman Cantrell |
| CERTAIN PROPERTY, *whether* | ) | |
| *stolen, embezzled or otherwise* | ) | |
| *obtained, being unknown or* | ) | |
| *unclaimed,* | ) | |
|  | ) | |
| Defendant. | ) | |

### AFFIDAVIT OF MAILING AND PUBLIC POSTING

|  |  |
|---|---|
| STATE OF OKLAHOMA | ) |
|  | ) ss. |
| COUNTY OF TULSA | ) |

COMES NOW Kimberly M. Lee, of lawful age, who being first duly sworn upon her oath, deposes and says:

1.   I am a Sergeant of the Tulsa Police Department. I have direct supervisory responsibility for the operations of the Tulsa Police Department Property Room.

2.   Postal notice was provided in accordance with Oklahoma statutes, to the <u>known owners</u> of any property listed with an actual or apparent value in excess of $250.00.

3.   That on the 23nd day of July 2014, a copy of the *Notice Setting Hearing* setting for hearing entered herein and the application filed with the court itemizing all property proposed for disposal was fully posted. Said posting being done at the assigned place for the posting of municipal notices, and at Tulsa Police Divisions: Riverside, Gilcrease, and Mingo Valley.

4.   That all items with an actual or apparent value in excess of $500.00 were published in the Tulsa Business & Legal News July 25, 2014 (Exhibit #1).



Further, affiant saith not.



Kimberly M. Lee
Sergeant, Tulsa Police Department
Property Room Supervisor

Subscribed to and sworn before me this 4 day of July, 2014.

Notary Public

My commission expires:

Jan. 10, 2016

My commission number:

12 000294

# EXHIBIT 1

# PUBLISHER'S AFFIDAVIT

UNCLAIMED PROPERTY SALE

PUBLICATION DATE(S)

07/25/14

CASE NUMBER:   CV-14-830/UNCLAIMED PROP-
ERTY

AD NO:        00184818

### LEGAL NOTICE

**STATE OF OKLAHOMA**

**COUNTY OF** Tulsa            } SS

I, of lawful age, being duly sworn, am a legal representative
of Tulsa Business & Legal News of Tulsa, Oklahoma, a daily
newspaper of general circulation in Tulsa, Oklahoma, a news-
paper qualified to publish legal notices, advertisements and
publications as provided in Section 106 of Title 25, Oklahoma
Statutes 1971 and 1982 as amended, and thereafter, and com-
plies with all other requirements of the laws of Oklahoma
with reference to legal publications. That said notice, a true
copy of which is attached hereto was published in the regular
edition of said newspaper during the period and time of publi-
cation and not in a supplement, on the ABOVE LISTED
DATE(S)

Representative Signature

Subscribed to and sworn to me this 26th day of July, 2014.

Notary Public

KATHLEEN A. DRAKE

My commission number: 06000391

My commission expires:  January 9, 2018

Customer #:  00013595

Customer: TULSA POLICE DEPARTMENT

Publisher's Fee: 33.60

184818
Published in the Tulsa Business
& Legal News, Tulsa, Tulsa
County, Oklahoma, July 25,
2014

NOTICE OF FORFEITURE
HEARING OF
UNCLAIMED PROPERTY
and/or EVIDENCE
CV-2014-00330

A hearing concerning the forfei-
ture of unclaimed evidence
and/or property to the City of
Tulsa Police Department will be
held Tuesday, August 5, 2014 at
9:00 a.m. before The Honorable
Judge Carlos J. Chappelle in
Room 513 in the Tulsa County
Court House, 500 S. Denver,
Tulsa, OK. A list of items subject
to forfeiture is available at all
Tulsa Police Dept. Patrol
Divisions, Detective Division,
Headquarters, at 600 Civic
Center, the TPD Property Room
at 1111 W. 17th St., and the City
Clerk Office @ One Tech Center,
175 E. 2nd St. Tulsa, OK.

Evidence and/or property forfeit-
ed to the City of Tulsa Police
Department as a result of this
hearing will be disposed of in
accordance with the order of the
court. The following owners will
have items with a value exceed-
ing $500.00 subject to
Forfeiture during listed court
date:

BG5627
Sean McDaniel      Cash

BG9624
Celynda Mattingly      Cash

**DISTRICT COURT**
**FILED**

JUL 31 2014

SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA. TULSA COUNTY





*1051170773*

## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

CITY OF TULSA, *ex rel.,*                )
WENDELL FRANKLIN, **Chief of Police,**   )
City of Tulsa, Oklahoma,                 )
                                         )
     *Plaintiff,*                       )
                                         )
v.                                       )
                                         )
**CERTAIN PROPERTY,** *whether*          )
*stolen, embezzled or otherwise obtained,* )
*being unknown or unclaimed,*            )
                                         )
     *Defendant.*                       )

DISTRICT COURT
**F I L E D**

JAN 28 2022

PON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

CV-**2022-00151**
JUDGE ~~DAMAN CANTRELL~~

### APPLICATION FOR DISPOSITION OF UNCLAIMED PERSONAL PROPERTY, MONEY AND LEGAL TENDER

COMES NOW, the City of Tulsa, Oklahoma, a municipal corporation ("City"), acting

pursuant to 11 O.S. § 34-104, and respectfully presents its Application seeking judicial supervision

over the disposition of certain unclaimed personal property, money and/or legal tender presently

secured in the property room of the Tulsa Police Department. In support hereof, the City states:

    1.    Attached hereto as Exhibit A is a list of unclaimed personal property items. Exhibit

A identifies each property receipt with the item(s) of property proposed for disposition.

    2.    Exhibit A also includes certain listings of unclaimed money, currency or legal tender.

The owner of the money, currency or legal tender is unknown or the owner has not made claim for

the money, currency or legal tender.

    3. Exhibit A also includes a listing of dangerous or deadly weapons, narcotic or poisonous

drugs, explosives and other property, the possession of which is prohibited by law. The City

requests that the Court issue an order directing the Chief of Police to immediately destroy or dispose

of this property in a proper manner.

    4.    Each item of unclaimed property, money and/or legal tender has been in the custody

of the City of Tulsa Police Department for at least ninety (90) days and its continued retention by the

City is not needed for evidentiary purposes or for any other purpose in connection with any

litigation.

     5.    This Court, pursuant to the referenced statute, has jurisdiction and authority to act

upon the presented application.

     WHEREFORE, premises considered, the City requests that the Court set this Application for

hearing, and that upon hearing, that the Court adjudicate any uncertain or disputed claims of

ownership of the listed property, money and/or legal tender and, with reference to any property,

money and/or legal tender for which ownership claim is not presented or proven, that the City be

authorized to sell, dispose, or transfer all such property in the manner provided by law.

          **CITY OF TULSA, OKLAHOMA,**
          *A municipal corporation*

          DAVID E. O'MEILIA,
          City Attorney

By:                                 
          Becky Johnson, OBA#18282
          Senior Assistant City Attorney
          175 E. 2nd St., Suite 685
          Tulsa, OK 74103
          (918) 596-9308 telephone
          (918) 596-9330 fax
          ATTORNEY FOR APPLICANT,
          CITY OF TULSA, ex rel. Wendell Franklin,
          Chief of Police of the City of Tulsa, Oklahoma



OKLAHOMA
State Courts Network

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

### IN THE DISTRICT COURT IN AND FOR <u>TULSA COUNTY</u>, OKLAHOMA

CITY OF TULSA, EX REL,.
WENDELL FRANKLIN, CHIEF OF POLICE, CITY
OF TULSA,
    Plaintiff,
v.
IN RE CERTAIN PROPERTY,
    Defendant.

**No. CV-2022-151**
**(Civil Misc.: APPLICATION FOR DISPOSITION OF UNCLAIMED PERSONAL PROPERTY)**

Filed: 01/28/2022
Closed: 04/07/2022

Judge: Civil Docket E

## PARTIES

CITY OF TULSA, Plaintiff
IN RE CERTAIN PROPERTY, Defendant

## ATTORNEYS

**Attorney**
JOHNSON, BECKY (Bar #18282)
175 E 2ND ST
STE 685
TULSA, OK 74103

**Represented Parties**
CITY OF TULSA,

## EVENTS

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Wednesday, March 30, 2022 at 11:00 AM<br>  HEARING ON NOTICE TO IDENTIFIED PROPERTY<br>OWNERS...BECKY JOHNSON/PL | | Daman H.<br>Cantrell | |

## ISSUES

For cases filed before 1/1/2000, ancillary issues may not appear except in the docket.

Issue #: 1    Issue: APPLICATION FOR DISPOSITION OF UNCLAIMED PERSONAL PROPERTY
(OTHER)
Filed By: CITY OF TULSA
Filed Date: 01/28/2022

| Party Name | Disposition Information |
|---|---|
| **Defendant:** | Disposed: FORFEITURE (ORDER OR JUDGMENT), |
| IN RE CERTAIN PROPERTY | 04/07/2022. Judge |

# DOCKET

| Date | Code | Description | |
|---|---|---|---|
| 01-28-2022 | [ TEXT ] | | #1 |
| | | CIVIL MISC. INITIAL FILING. | |
| 01-28-2022 | [ OTHER ] | | |
| | | APPLICATION FOR DISPOSITION OF UNCLAIMED PERSONAL PROPERTY | |
| 01-28-2022 | [ DMFE ] | | $ 7.00 |
| | | DISPUTE MEDIATION FEE | |
| 01-28-2022 | [ PFE1 ] | | $ 85.00 |
| | | PETITION | |
| | | Document Available (#1051170773) ◻TIFF   ◻PDF | |
| 01-28-2022 | [ PFE7 ] | | $ 6.00 |
| | | LAW LIBRARY FEE | |
| 01-28-2022 | [ OCISR ] | | $ 25.00 |
| | | OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND | |
| 01-28-2022 | [ OCJC ] | | $ 1.55 |
| | | OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND | |
| 01-28-2022 | [ OCASA ] | | $ 5.00 |
| | | OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES | |
| 01-28-2022 | [ SSFCHSCPC ] | | $ 10.00 |
| | | SHERIFF'S SERVICE FEE FOR COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | |
| 01-28-2022 | [ CCADMINCSF ] | | $ 1.00 |
| | | COURT CLERK ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | |
| 01-28-2022 | [ CCADMIN0155 ] | | $ 0.16 |
| | | COURT CLERK ADMINISTRATIVE FEE ON $1.55 COLLECTION | |
| 01-28-2022 | [ SJFIS ] | | $ 0.45 |
| | | STATE JUDICIAL REVOLVING FUND - INTERPRETER AND TRANSLATOR SERVICES | |
| 01-28-2022 | [ DCADMIN155 ] | | $ 0.23 |
| | | DISTRICT COURT ADMINISTRATIVE FEE ON $1.55 COLLECTIONS | |
| 01-28-2022 | [ DCADMIN05 ] | | $ 0.75 |
| | | DISTRICT COURT ADMINISTRATIVE FEE ON $5 COLLECTIONS | |

01-28-2022[ DCADMINCSF ]                                                                                  $ 1.50

> DISTRICT COURT ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF
> COUNTY COMMISSIONER

01-28-2022[ CCRMPF ]                                                                                     $ 10.00

> COURT CLERK'S RECORDS MANAGEMENT AND PRESERVATION FEE

01-28-2022[ CCADMIN04 ]                                                                                   $ 0.50

> COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS

01-28-2022[ TEXT ]

> OCIS HAS AUTOMATICALLY ASSIGNED JUDGE CIVIL DOCKET E TO THIS CASE.

01-28-2022[ ADJUST ]                                                                                      $ 3.86

> ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION

01-28-2022[ ACCOUNT ]

> ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE
> FOLLOWING AMOUNTS:
> CV-2022-151: AC89 COURT CLERK'S RECORDS MANAGEMENT AND PRESERVATION FEE
> -$0.25
> CV-2022-151: AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY -$0.25
> CV-2022-151: AC79 OCIS REVOLVING FUND -$0.63
> CV-2022-151: AC67 DISTRICT COURT REVOLVING FUND -$0.07
> CV-2022-151: AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS -$0.02
> CV-2022-151: AC64 DISPUTE MEDIATION FEES CIVIL ONLY -$0.18
> CV-2022-151: AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND -$0.04
> CV-2022-151: AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES -$0.13
> CV-2022-151: AC31 COURT CLERK REVOLVING FUND -$0.05
> CV-2022-151: AC23 LAW LIBRARY FEE CIVIL AND CRIMINAL -$0.15
> CV-2022-151: AC01 CLERK FEES -$2.09

01-28-2022[ ACCOUNT ]

> RECEIPT # 2022-4314158 ON 01/28/2022.
> PAYOR: HAWKINS/AIMEE TOTAL AMOUNT PAID: $ 154.14.
> LINE ITEMS:
> CV-2022-151: $82.91 ON AC01 CLERK FEES.
> CV-2022-151: $3.86 ON AC09 CARD ALLOCATIONS.
> CV-2022-151: $5.85 ON AC23 LAW LIBRARY FEE CIVIL AND CRIMINAL.
> CV-2022-151: $1.61 ON AC31 COURT CLERK REVOLVING FUND.
> CV-2022-151: $4.87 ON AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES.
> CV-2022-151: $1.51 ON AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND.
> CV-2022-151: $6.82 ON AC64 DISPUTE MEDIATION FEES CIVIL ONLY.
> CV-2022-151: $0.43 ON AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS.
> CV-2022-151: $2.41 ON AC67 DISTRICT COURT REVOLVING FUND.
> CV-2022-151: $24.37 ON AC79 OCIS REVOLVING FUND.
> CV-2022-151: $9.75 ON AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY.
> CV-2022-151: $9.75 ON AC89 COURT CLERK'S RECORDS MANAGEMENT AND PRESERVATION
> FEE.

**02-07-2022 [ CTFREE ]**

CANTRELL, DAMAN: APPLICATION FOR HEARING AND DIRECTING ISSUANCE OF NOTICE TO IDENTIFIED PROPERTY OWNERS AND MEMBERS OF THE GENERAL PUBLIC HAS BEEN SET FOR HEARING ON 3/30/22; 11 AM, IN ROOM 631.

**02-09-2022 [ O ]**

ORDER SETTING APPLICATION FOR HEARING AND DIRECTING ISSUANCE OF NOTICE TO IDENTIFIED PROPERTY OWNERS AND MEMBERS OF THE GENERAL PUBLIC / A TO J
Document Available (#1051443014) ☐TIFF  ☐PDF

**03-11-2022 [ PP ]**

PROOF OF PUBLICATION ( TULSA WORLD ) NOTICE OF FORFEITURE HEARING OF UNCLAIMED PROPERTY AND/OR EVIDENCE (WRONG CASE NO. ON PUBLICATION OF CV-22-155// CALLED AND NOTIFIED ATTY BECKY JOHNSON OF INCORRECT NO.)
Document Available (#1050771276) ☐TIFF  ☐PDF

**03-11-2022 [ TEXT ]**                                    CITY OF TULSA 👤

AFFIDAVIT OF PUBLICATION
Document Available (#1050771276) ☐TIFF  ☐PDF

**03-30-2022 [ PP ]**

PROOF OF PUBLICATION (TULSA WORLD)(COPY)- NOTICE OF FORFEITURE HEARING OF UNCLAIMED PROPERTY AND/OR EVIDENCE
Document Available (#1052016821) ☐TIFF  ☐PDF

**04-07-2022 [ CTFREE ]**

CANTRELL, DAMAN: ORDER AUTHORIZING DISPOSITION OF PROPERTY, DISBURSEMENT OF PROPERTY AND TRANSFERRING OWNERSHIP OF CERTAIN PROPERTY TO THE CITY OF TULSA HAS BEEN SUBMITTED AND SIGNED BY THE COURT.
ELECTRONIC SIGNATURE AUTHORIZED.
((( CLERK PLACED ORDER IN JUDGE'S OUTBOX TO BE PICKED UP FOR FILING. )))

**04-07-2022 [ DISPFORF ]**                    IN RE CERTAIN PROPERTY 👤   #1

ORDER AUTHORIZING DISPOSITION OF PROPERTY, DISBURSEMENT OF PROPERTY AND TRANSFERRING OWNERSHIP OF CERTAIN PROPERTY TO THE CITY OF TULSA HAS BEEN SUBMITTED AND SIGNED BY THE COURT.

**04-20-2022 [ O ]**

ORDER AUTHORIZING DISPOSITION OF PROPERTY DISBURSEMENT OF PROPERTY AND TGRANSFERRING OWNERSHIP OF CERTAIN PROPERTY TO THE CITY OF TULSA
Document Available (#1052182063) ☐TIFF  ☐PDF

**02-21-2023 [ RPT ]**

RETURN AND RECONCILIATION REPORT
Document Available (#1054560320) ☐TIFF  ☐PDF



* 1 0 5 0 7 7 1 2 7 6 *

# TULSA WORLD

P.O. Box 1770    Tulsa, Oklahoma    74102-1770   |   tulsaworld.com

**Account Number**

1049538

CITY OF TULSA POLICE DEPT, PROPERTY
ROOM
Attn  LT. PATRICK STEPHENS
600 CIVIC CENTER
TULSA, OK 74103

**DISTRICT COURT**
**FILED**

MAR 1 1 2022

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

**Date**

February 14, 2022

| Date | Category | Description | Ad Size | Total Cost |
|---|---|---|---|---|
| 02/12/2022 | Legal Notices | CV-2022-155 FORFEITURE | 3 x 74.00 CL | 142.08 |

CV- ZZ-151

## Affidavit of Publication

I,    **Brenda Brumbaugh**    , of lawful age, am a legal representative of the Tulsa World of Tulsa, Oklahoma, a daily newspaper
of general circulation in Tulsa County, Oklahoma, a legal newspaper qualified to publish legal notices, as defined in 25 O.S. § 106 as
amended, and thereafter, and complies with all other requirements of the laws of Oklahoma with reference to legal publication. That said
notice, a true copy of which is attached hereto, was published in the regular edition of said newspaper during the period and time of
publication and not in a supplement, on the DATE(S) LISTED BELOW

02/12/2022

Newspaper reference: 0000745868

_Brenda Brumbaugh_
Legal Representative

Sworn to and subscribed before me this date:    2-14-22

_____
Notary Public

My Commission expires    9-1L-23

745848
Published in the Tulsa World, Tulsa County, Oklahoma, February 12, 2022

NOTICE OF FORFEITURE HEARING OF
UNCLAIMED PROPERTY and/or EVIDENCE
CV-2022-155
151

A hearing concerning the forfeiture of unclaimed evidence and/or property to the City of Tulsa
Police Department will be held Wednesday, March 36th at 11:00 a.m. before The Honorable
Judge Daman H. Cantrell in Room 471 in the Tulsa County Court House, 500 S. Denver, Tulsa,
OK. A list of items subject to forfeiture is available at all Tulsa Police Dept. Patrol Divisions,
Records and Detective Division at 600 Civic Center, the TPD Property Room at 1111 W. 17th
St., and the City Clerk Office of One Tech Center, 175 E. 2nd St. Tulsa, OK. Evidence and/or
property forfeited to the City of Tulsa Police Department as a result of this hearing will be
disposed of in accordance with the order of the court.

| | | |
|---|---|---|
| BE7304 | Wesley Nelson | CASH |
| BF4782 | Miguel Valdivia | CASH |
| BJ1034 | Ronald Dale Arthur | CASH |
| BF1718 | Christopher Lewis | CASH |
| BF4163 | John Dabney Jr | CASH |
| BG6064 | Carl L. Brown | CASH |
| BG7537 | Jose Lasaro Martinez Sr. | CASH |
| BL1835 | Jerrico Pitts | CASH |
| BL1835 | Calvin Christian III | CASH |
| BE7554 | Ernesto Torres | FIREARM |
| BE7632 | Tony Guillory | FIREARM |
| BE7571 | Carlos Eugene Wright | FIREARM |
| BE8028 | Steven Rodman | FIREARM |
| BF6290 | Sean Miller | FIREARM |
| BF2330 | Tori Fritz | FIREARM |
| BF2061 | Eric Williams | FIREARM |
| BF3581 | Brandon Briggs | FIREARM |
| BF8547 | Delano Majors | FIREARM |
| BG1897 | Nettoll Mercado | FIREARM |
| BJ1172 | Darrin Jones | FIREARM |
| BK7065 | Kamron Cody Peeler | FIREARM |
| BN2529 | Lloyd Trotter | FIREARM |
| BP3128 | Daniel Nunn | FIREARM |
| AR1542 | Unknown/Taurus/NF761201 | FIREARM |
| BE2742 | Unknown/Colt1911/149905 | FIREARM |
| BE2519 | Unknown/Taurus/***62724 | FIREARM |
| BE7619 | Unknown/Mellenium/TC217671 | FIREARM |
| BE8256 | Unknown/S&W/TB43987 | FIREARM |
| BE8356 | Unknown/Maxaberg48/MV5605AG | FIREARM |
| BEK533 | Unknown/SavageArms64/6N83832 | FIREARM |
| BE9239 | Unknown/Ruger/Z1145530 | FIREARM |
| BE9560 | Unknown/Super Silver/R1A1022290 | FIREARM |
| BF0760 | Unknown/BrycoArms/1253903 | FIREARM |
| BF0760 | Unknown/SilverAM/TA4498 | FIREARM |
| BF0928 | Unknown/Remington/41402377M | FIREARM |
| BF0945 | Unknown/Witness/EA24022 | FIREARM |
| BF0945 | Unknown/ExerplibralicalAP242555 | FIREARM |
| BF1275 | Unknown/JCHispina/694048 | FIREARM |
| BF1828 | Unknown/22TS&W/0796474 | FIREARM |
| BF2035 | Unknown/Bersa/781727 | FIREARM |
| BF3025 | Unknown/Cobra/01799 | FIREARM |
| BF2370 | Unknown/Ruger/284064 | FIREARM |
| BG8915 | Unknown/Beretta/TEER427075Z | FIREARM |
| RG4915 | Unknown/Beretta/BA6359Z | FIREARM |
| BH1255 | Unknown/IntroTechDC/DS45965 | FIREARM |
| BH3813 | Unknown/Revolver/9938-Q | FIREARM |
| BH3813 | Unknown/Titan/ZE84426 | FIREARM |
| BH8432 | Unknown/Keltec/NH264 | FIREARM |
| BK4482 | Unknown/TaurusMillennium/KAU10583 | FIREARM |
| BK7065 | Unknown/PARAUSA/K000036 | FIREARM |
| BM1932 | Unknown/Ruger/LCP/371227481 | FIREARM |
| BN6943 | Unknown/Remington/A4293 | FIREARM |
| BP1262 | Unknown/Bushnell/6433 | FIREARM |
| BP1362 | Unknown/AR15/DNVC347492 | FIREARM |
| BP1262 | Unknown/Jimenez/271417 | FIREARM |
| BP1362 | Unknown/RavenArms/400018 | FIREARM |
| BP1362 | Unknown/S&W/469/TAV4781 | FIREARM |
| BP1502 | Unknown/PenterArms/117207 | FIREARM |





Forensic Laboratory
**TULSA POLICE DEPARTMENT**

LABORATORY REPORT

INCIDENT NO: 2010-033865
PROPERTY RECEIPT NO: BE 6525
LAB FILE NUMBER: 2010-1158
CUSTOMER: Tulsa County District Attorney, 500 South Denver Ave. Suite 900, Tulsa, Oklahoma 74103
REQUESTOR: T. Evans, ADA

---

*Testing was performed on the following items from 10/07/10 to 10/08/10. The following items were received from the Property Room on 10/06/10 and analyzed for the presence of human DNA (deoxyribonucleic acid). When obtained, DNA was characterized at the Amelogenin locus, and the following STR (short tandem repeat) loci: Penta D, Penta E, and the thirteen core loci using PCR (polymerase chain reaction). For more information on the thirteen core loci (D8S1179, D21S11, D7S820, CSF1PO, D3S1358, TH01, D13S317, D16S539, vWA, TPOX, D18S51, D5S818, and FGA) visit the website: http://www.cstl.nist.gov/biotech/strbase/effbicore.htm*

**Item #16   Swabs (2) from "Steering Wheel" in a Sealed White Paper Envelope**
DNA information obtained from the combined cutting of swab one (S1) and swab two (S2) of this item appears to have come from one individual.

**Item #17   Swabs (2) from "Gear Shifter" in a Sealed White Paper Envelope**.
DNA information obtained from the combined cutting of swab one (S1) and swab two (S2) of this item appears to have come from one individual.

**Item #18   Swabs (2) from "Touch Screen" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #19   Swabs (2) from "Drivers Door Exterior Handle" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #20   Swabs (2) from "Inside Drivers Door Handle" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #21   Swabs (2) from "Drivers Interior Door Grab" in a Sealed White Paper Envelope**
DNA information obtained from the combined cutting of swab one (S1) and swab two (S2) of this item appears to be a mixture of at least two individuals.

**Item #22   Swabs (2) from "Drivers Headrest" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #23   Swabs (2) from "Front Passenger Side Door Exterior Handle" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #24   Swabs (2) from "Front Passenger Door Interior Handle" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #25   Swabs (2) from "Front Passenger Side Door Interior Door Grab" in a Sealed White Paper Envelope**
DNA information obtained from the combined cutting of swab one (S1) and swab two (S2) of this item appears to have come from at least one individual.

This Report shall not be reproduced, except in full, without the approval of the Labora

1111 W. 17ᵗʰ. • Tulsa, OK 74107 • Office 918.596.9266 • Fax 918.596-1875
www.cityoftulsa.org

COPY

STATE'S
EXHIBIT
5

79



**Forensic Laboratory**
**TULSA POLICE DEPARTMENT**

INCIDENT NO: 2010-033865                                      LAB FILE NUMBER: 2010-1158
PROPERTY RECEIPT NO:  BE 6525

---

**Item #26    Swabs (2) from "Front Passenger Headrest" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #27    Swabs (2) from "Trunk Lid Top" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #28    Swabs (2) from "Trunk Lid Top" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #29    Swabs (2) from "Trunk Lid Back" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #30    Swabs (2) from "A" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #31    Swabs (2) from "B" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #32    Swabs (2) from "C" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #33    Swabs (2) from "D" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #34    Swabs (2) from "E" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #35    Swabs (2) from "G" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

*The above items were returned to the Property Room on 10/08/10.  Conclusions based on the STR results are as follows:*

1.  Item #16 S1 &S2:
    The DNA information obtained from this item appears to have come from an unknown male individual. This
    unknown DNA information is suitable for comparisons to reference samples and has been entered into the DNA
    database.

2.  Item #17 S1 &S2:
    The DNA information obtained from this item appears to have come from an unknown male individual. This
    unknown DNA information is suitable for comparisons to reference samples. However, due to the small amount of
    DNA information obtained, this DNA information would be expected to be present in 1 in every 2 U.S. Caucasians, 1
    in every 2 African-Americans, or 1 in every 2 Southwestern Hispanics. This DNA information is not suitable for
    entry into the DNA database.

This Report shall not be reproduced, except in full, without the approval of the Laboratory

1111 W. 17ᵗʰ • Tulsa, OK 74107 • Office 918.596.9266 • Fax 918.596-1875
www.cityoftulsa.org

189



**CITY OF Tulsa**
A New Kind of Energy.

INCIDENT NO: 2010-033865
PROPERTY RECEIPT NO: BE 6525

**Forensic Laboratory
TULSA POLICE DEPARTMENT**

LAB FILE NUMBER: 2010-1158

---

3.  **Item #21 S1&S2:**
    The mixture of DNA information obtained from this item appears to be from unknown individuals, of which at least one is male. This mixture of DNA information is suitable for comparison to reference samples. However, the mixture does not have clear major or minor contributors, so a statistical value for inclusion cannot be calculated. The mixture of DNA information was not entered into the DNA database.

4.  **Item #25 S1&S2:**
    The DNA information obtained from this item appears to have come from an unknown male individual. This unknown DNA information is suitable for comparisons to reference samples but is not suitable for entry into the DNA database.

_____   10 15 10
Jonathan Wilson, LAB

Forensic DNA Technical Manager

Pursuant to O.S. Title 22, Section 751, I hereby certify that I am the maker of this document and that it is a true and correct report of my findings based upon analysis and interpretation.

This Report shall not be reproduced, except in full, without the approval of the Laboratory

1111 W. 17th • Tulsa, OK 74107 • Office 918.596.9266 • Fax 918.596-1875
www.cityoftulsa.org

118



**Forensic Laboratory**
**TULSA POLICE DEPARTMENT**

LABORATORY REPORT

INCIDENT NO: 2010-033865
PROPERTY RECEIPT NO: BE6620
CUSTOMER: Tulsa Police Department, 600 Civic Center, Tulsa, OK 74103
REQUESTOR: T. Taylor, RID

LAB FILE NUMBER: 2010-1197

---

Name associated with this request: Stephen John Rodolf.

*The following item was received from the Tulsa Police Department Property Room on 02/08/11, and analyzed for the presence of human DNA (deoxyribonucleic acid). Testing was performed on this item between 02/08/11 and 02/17/11. When obtained, DNA was characterized at the Amelogenin locus, and the following STR (short tandem repeat) loci: Penta D, Penta E, and the thirteen core loci using PCR (polymerase chain reaction). For more information on the thirteen core loci (D8S1179, D21S11, D7S820, CSF1PO, D3S1358, TH01, D13S317, D16S539, vWA, TPOX, D18S51, D5S818, and FGA) visit the website: http://www.cstl.nist.gov/biotech/strbase/fbicore.htm*

<u>Item #2</u>    **DNA Collection Swab from Item #1 (…"Magazine"…) in a Sealed White Paper Envelope**
DNA information obtained from a cutting of this item appears to have come from at least one individual.

*This item was returned to the Tulsa Police Department Property Room on 02/16/11. Conclusions based upon this STR result and the STR result reported previously on 10/28/10 by Jonathan Wilson for Lab-File Number 2010-1158 Property-Receipt BE6525 Item #59 (Buccal Swabs from Ryan Smith), and the STR results reported previously on 12/13/10 by Byron Smith for Lab-File Number 2010-1158 Property Receipt BE6620 Item #3 (Buccal Swabs from William Tottress), and Item #4 (Buccal Swabs from Byron Smith) are as follows:*

<u>Item #2:</u>
The individuals Ryan Smith, William Tottress, and Byron Smith are excluded as potential contributors to the DNA information obtained from this item. The DNA information obtained appears to be from an unknown individual for whom a reference sample was not submitted. This DNA information is suitable for comparison to additional reference samples, but is not suitable for entry into the DNA database.

*The DNA extract from the following item was analyzed for the presence of male-only Y-chromosomal DNA (deoxyribonucleic acid). When obtained, DNA was characterized at the following Y-STR (short tandem repeat) loci: DYS456, DYS389I, DYS390, DYS389II, DYS458, DYS19, DYS385a/b, DYS393, DYS391, DYS439, DYS635, DYS392, YGATAH4, DYS437, DYS438, and DYS448 using PCR (polymerase chain reaction). For more information on Y-STR haplotyping visit the website: http://www.cstl.nist.gov/biotech/strbase/kits/Yfiler.htm*

<u>Item #2</u>    **DNA Collection Swab from Item #1 (…"Magazine"…) in a Sealed White Paper Envelope**
No Y-chromosomal DNA information was obtained from the remaining DNA extract of this item.

Administrative Review: KC  02/11/11
Technical/Peer Review: (signature)
Requestor:
Records
S: Douglas, DET
D. Walker, DET
LFN 2010-1158

*Byron C. Smith* 02/22/11
**Byron C. Smith, LAB**

Senior Forensic Scientist
Pursuant to O.S. Title 22, Section 751, I hereby certify that I am the maker of this document and that it is a true and correct report of my findings based upon opinion and interpretation.

COPY

This Report shall not be reproduced, except in full, without the approval of the Laboratory.

1111 W. 17th. • Tulsa, OK 74107 • Office 918.596.9266 • Fax 918-596-1875
www.cityoftulsa.org

LAB-301A (10/10)



**Forensic Laboratory**
**TULSA POLICE DEPARTMENT**

LABORATORY SUPPLEMENTAL REPORT A

INCIDENT NO: 2010-033865
PROPERTY RECEIPT NO: BE 6525
CUSTOMER: Tulsa County District Attorney, 500 South Denver Ave. Suite 900, Tulsa, Oklahoma 74103
REQUESTOR: T. Evans, ADA

LAB FILE NUMBER: 2010-1158

*Testing was performed on the following items from 10/18/10 to 10/25/10. The following items were received from the Property Room on 10/15/10 and analyzed for the presence of human DNA (deoxyribonucleic acid). When obtained, DNA was characterized at the Amelogenin locus, and the following STR (short tandem repeat) loci: Penta D, Penta E, and the thirteen core loci using PCR (polymerase chain reaction). For more information on the thirteen core loci (D8S1179, D21S11, D7S820, CSF1PO, D3S1358, TH01, D13S317, D16S539, vWA, TPOX, D18S51, D5S818, and FGA) visit the website: http://www.cstl.nist.gov/biotech/strbase/fbicore.htm*

**Item #59    Buccal Swabs from Ryan Smith in a Sealed White Paper Envelope**
A complete DNA profile was obtained from this individual.

---

**Item #7    Swabs (2) from "Floor Handle Swab (From Under-Sink Drawer)" in a Sealed White Paper Envelope**
DNA information obtained from the combined cutting of swab one (S1) and swab two (S2) of this item appears to be a mixture of at least two individuals.

**Item #8    Swabs (2) from "Knife Drawer Handle Swab" in a Sealed White Paper Envelope**
DNA information obtained from the combined cutting of swab one (S1) and swab two (S2) of this item appears to be a mixture of at least three individuals.

**Item #9    Swabs (2) from "Under Sink Cabinet Door Pull" in a Sealed White Paper Envelope**
DNA information obtained from the combined cutting of swab one (S1) and swab two (S2) of this item appears to be a mixture of at least two individuals.

**Item #10    Swabs (2) from "Left Desk Drawer" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #11    Swabs (2) from "Right Desk Drawer" in a Sealed White Paper Envelope**
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

**Item #12    Swabs (2) from "Safe Key Pad" in a Sealed White Paper Envelope**
DNA information obtained from the combined cutting of swab one (S1) and swab two (S2) of this item appears to have come from one individual.

*The above items were returned to the Property Room on 10/18/10. Conclusions based on these STR results and the STR results reported on 10/13/10 for Item #16 S1 & S2 (Steering Wheel Swabs), Item #17 S1 & S2 (Gear Shifter Swabs), Item #21 S1 & S2 (Drivers Interior Door Grab Swabs) and Item #25 S1 & S2 (Front Passenger Side Door Interior Grab Swabs) are as follows:*

COPY

This Report shall not be reproduced, except in full, without the approval of the Laboratory

150

1111 W. 17ˢᵗ. • Tulsa, OK 74107 • Office 918.596.9266 • Fax 918.596-1875



**CITY OF**

A New Kind of Energy.

**Forensic Laboratory**
**TULSA POLICE DEPARTMENT**

INCIDENT NO: 2010-033865
PROPERTY RECEIPT NO: BE 6525

LAB FILE NUMBER: 2010-1158

1. Item #7 S1&S2:
   Ryan Smith is excluded as a potential contributor to the mixture of DNA information obtained from this item. The mixture of DNA information obtained from this item does have clear major and minor contributors. The major contributor appears to be from an unknown female for whom a reference sample was not submitted. The minor contributor appears to be from an unknown individual for whom a reference sample was not submitted. The DNA information from the major and minor contributor is suitable for comparisons to additional reference samples. However, the DNA information from the minor contributor would be expected to be found in 1 in every 12 U.S. Caucasians, 1 in every 24 African-Americans, or 1 in every 22 Southwestern Hispanics. The DNA information obtained from the major and minor contributor is not suitable for entry into the DNA database.

2. Item #8 S1&S2:
   Ryan Smith is excluded as a potential contributor to the mixture of DNA information obtained from this item. The mixture of DNA information obtained from this item appears to be from unknown individuals, of which at least one is male. This mixture of DNA information is suitable for comparison to reference samples. However, the mixture does not have clear major or minor contributors, so a statistical value for inclusion cannot be calculated. The mixture of DNA information is not suitable for entry into the DNA database.

3. Item #9 S1&S2:
   Ryan Smith is excluded as a potential contributor to the mixture of DNA information obtained from this item. The mixture of DNA information obtained from this item appears to be from unknown individuals, of which at least one is male. This mixture of DNA information is suitable for comparison to reference samples. However, the mixture does not have clear major or minor contributors, so a statistical value for inclusion cannot be calculated. The mixture of DNA information is not suitable for entry into the DNA database until a reference sample from the victim is analyzed.

4. Item #12 S1&S2:
   Ryan Smith cannot be excluded as a potential contributor of the DNA information obtained from this item. Based on the DNA information obtained from the thirteen core loci, the probability of selecting an individual at random who could have contributed this information is 1 in 2,200 U.S. Caucasians, 1 in 260 African-Americans, or 1 in 2,400 Southwestern Hispanics. This DNA information is not suitable for entry into the DNA database.

5. Item #16 S1&S2:
   Ryan Smith is excluded as a potential contributor to the DNA information obtained from this item. The DNA information obtained from this item appears to have come from an unknown male individual. This unknown DNA information is suitable for comparisons to reference samples and has been entered into the DNA database.

6. Item #17 S1&S2:
   Ryan Smith cannot be excluded as a potential contributor of the DNA information obtained from this item. Based on the DNA information obtained from the thirteen core loci, the probability of selecting an individual at random who could have contributed this information is 1 in 2 U.S. Caucasians, 1 in 2 African-Americans, or 1 in 2 Southwestern Hispanics. This DNA information is not suitable for entry into the DNA database.

This Report shall not be reproduced, except in full, without the approval of the Laboratory

**151**

1111 W. 17st. • Tulsa, OK 74107 • Office 918.596.9266 • Fax 918.596-1875



CITY OF
Tulsa
A New Kind of Energy.

Forensic Laboratory
TULSA POLICE DEPARTMENT

INCIDENT NO: 2010-033865
PROPERTY RECEIPT NO: BE 6525

LAB FILE NUMBER: 2010-1158

---

7. <u>Item #21 S1&S2:</u>
Ryan Smith is excluded as a potential contributor to the mixture of DNA information obtained from this item. The mixture of DNA information obtained from this item appears to be from unknown individuals, of which at least one is male. This mixture of DNA information is suitable for comparison to reference samples. However, the mixture does not have clear major or minor contributors, so a statistical value for inclusion cannot be calculated. The mixture of DNA information was not entered into the DNA database.

8. <u>Item #25 S1&S2:</u>
Ryan Smith is excluded as a potential contributor to the DNA information obtained from this item. The DNA information obtained from this item appears to have come from an unknown male individual. This unknown DNA information is suitable for comparisons to reference samples but is not suitable for entry into the DNA database.

Administrative Review: _____ 102810
Technical/Peer Review: _____ 102810
cc: Requestor
Records

_____ 102810
Jonathan Wilson, LAB
Forensic DNA Technical Manager

Pursuant to O.S. Title 22, Section 751, I hereby certify that I am the maker of this document and that it is a true and correct report of my findings based upon opinion and interpretation.

This Report shall not be reproduced, except in full, without the approval of the Laboratory

152



**Forensic Laboratory**
**TULSA POLICE DEPARTMENT**

LABORATORY SUPPLEMENTAL REPORT B

INCIDENT NO: 2010-033865
PROPERTY RECEIPT NOs: BE 6620 and BE 6525
LAB FILE NUMBER: 2010-1158
CUSTOMER: Tulsa County District Attorney, 500 South Denver Ave. Suite 900, Tulsa, Oklahoma 74103
REQUESTOR: T. Evans, ADA

---

*The following items were received from the Tulsa Police Department Property Room on 12/02/10, and analyzed for the presence of human DNA (deoxyribonucleic acid). Testing was performed on these items between 12/06/10 and 12/09/10. When obtained, DNA was characterized at the Amelogenin locus; and the following STR (short tandem repeat) loci: Penta D, Penta E, and the thirteen core loci using PCR (polymerase chain reaction). For more information on the thirteen core loci (D8S1179, D21S11, D7S820, CSF1PO, D3S1358, TH01, D13S317, D16S539, vWA, TPOX, D18S51, D5S818, and FGA) visit the website: http://www.cstl.nist.gov/biotech/strbase/fbicore.htm*

**Property Receipt BE 6620:**
**Item #3    Buccal Swabs from William Tottress in a Sealed White Paper Envelope**
**Item #4    Buccal Swabs from Byron Smith in a Sealed White Paper Envelope**
Complete DNA profiles were obtained from these individuals.

*The above items were returned to the Property Room on 12/10/10. Conclusions based on these STR results and the STR results reported on 10/13/10 for Property Receipt BE 6525 Item #16 S1 & S2 (Steering Wheel Swabs), Item #17 S1 & S2 (Gear Shifter Swabs), Item #21 S1 & S2 (Drivers Interior Door Grab Swabs) and Item #25 S1 & S2 (Front Passenger Side Door Interior Grab Swabs), and the STR results reported on 10/28/10 for Property Receipt BE 6525 Item #7 S1 & S2 (Under Sink Drawer Swabs), Item #8 S1 & S2 (Knife Drawer Handle Swabs), Item #9 S1 & S2 (Under Sink Cabinet Door Swabs), and Item #12 S1 & S2 (Safe Key Pad Swabs) are as follows:*

1. Item #7 S1&S2, Item #8 S1&S2, Item #9 S1&S2, and Item #21 S1&S2:
   Byron Smith and William Tottress are excluded as potential contributors to the mixtures of DNA information obtained from these items.

2. Item #12 S1&S2, Item #16 S1&S2, Item #17 S1&S2, and Item #25 S1&S2:
   Byron Smith and William Tottress are excluded as potential contributors to the DNA information obtained from these items.

Administrative Review _____ 6/14/10
Technical/Peer Review _____
                                 1.21.10

cc:    Requestor
       Records

*Byron C. Smith* 12/13/10
**Byron C. Smith, LAB**
Forensic Scientist II
Pursuant to O.S. Title 22, Section 751, I hereby certify that I am the maker of this document and that it is a true and correct report of my findings based upon opinion and interpretation.

This Report shall not be reproduced, except in full, without the approval of the Laboratory

1111 W. 17th. • Tulsa, OK 74107 • Office 918.596.9266 • Fax 918.596-1875
www.cityoftulsa.org

LAB-301A



**Forensic Laboratory**
**TULSA POLICE DEPARTMENT**

**LABORATORY REPORT**

INCIDENT NO: 2010-033865
PROPERTY RECEIPT NO: BE-6525
LAB FILE NUMBER: 2010-1158
CUSTOMER: Tulsa Police Department, 600 Civic Center, Tulsa, Oklahoma 74103
REQUESTOR: M. Farrell, DET.

———————— Supplemental Report #A ————————

**Victim(s): Stephen Rodolf**

**Suspect(s): None listed**

The evidence was received from the Tulsa Police Department Detective Division on Thursday 6-24-10.

**Description of Evidence:**

Latent Print #(Tue)062210-02000-1 – One tape sealed latent envelope marked "MYF" containing twenty-seven (27) latent cards.

**Results of Examination:**

The latent prints recovered from this investigation have been searched through the Automated Fingerprint Identification System with negative results.

Please obtain the elimination fingerprints of the victim(s) and submit them to the forensic laboratory for comparison. Please be sure to include palm prints.

Administrative Review
Technical/Peer Review
Report Completed: 062910

cc: Requestor
Records
Det. J. White

*Robert R. Yerton*
**Robert R. Yerton, LAB**
Forensic Technical Manager
Pursuant to O.S. Title 22, Section 751, I hereby certify that i
am the maker of this document and that it is a true and correct
report of my findings based upon opinion and interpretation.

This Report shall not be reproduced, except in full, without the approval of the Laboratory

1111 W. 17⁰. • Tulsa, OK 74107 • Office 918.596.9266 • Fax 918.596.1875

35

# IN THE UNITED STATES COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

District Court No. 05-CV-461-TCK-PJC

### ANNA MARIA COWDREY
**Plaintiff**

**vs.**

### THE CITY OF TULSA
**and**
### WHITNEY ALLEN, CHRISTOPHER STOUT & ANTHONY CELLINO,
**individuals,**
**Defendants**

## PLAINTIFF'S MOTION
## AND SUPPORTING BRIEF
## FOR NEW TRIAL/RECONSIDERATION

Timothy S. Gilpin
1645 S. Cheyenne
Tulsa, Oklahoma 74119
(918) 583-8900
(918) 583-4768 Fax
timgilpin@gilpinlaw.net
**Attorney for Plaintiff**

(EXHIBIT - B)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ANNA MARIA COWDREY,           )
                  Plaintiff,          )
                                    )      Case No. 05-CV-461-TCK-PJC
WHITNEY ALLEN, an individual,     )
CHRISTOPHER STOUT, an individual  )
ANTHONY CELLINO, aka "Tony"        )
    CELLINO, an individual, and      )
The CITY OF TULSA, a municipality,   )
                  Defendants.        )

### PLAINTIFF'S TRIAL BRIEF

The Plaintiff, Anna Maria Cowdrey, provides this Trial Brief. The Amended Complaint contains counts for: Malicious Prosecution; Abuse of Process; Deprivation of Constitutional Rights, 42 U.S.C. §1983; Personal Rights & Malicious Wrong, 76 O.S. §6; Intentional Infliction of Emotional Distress; Negligent Hiring, Supervision & Retention; Tortious Interference With Employment and Intentional Misconduct Causing Harm.

Cowdrey was a Tulsa Police Officer for 14 years. She received commendations, good performance ratings and was described as doing an excellent job, a promising officer and a good detective. In April, 2003, Cowdrey was working in the Tulsa Police Property Room when allegations arose about missing money and items. A police report was completed that listed *nine (9) suspects,* including: Sgt. **Whitney Allen** (Property Room Supervisor), Cpl. **Tracy Clark**, Anna Cowdrey, Bob Kurowski, James Poyner, Todd Henley, Brian Horry, Alan Terry and Scott McQuarters. This report was assigned to Detectives Anthony Cellino and Christopher Stout for investigation. City policy makers oversaw, supervised and participated in the investigation and prosecution of Cowdrey, including Police Chief Dave Been.

1

The Defendants fabricated inculpating evidence, falsified misleading evidence, concealed, manipulated, mis-characterized and misrepresented exculpating evidence concerning Cowdrey.

## EVIDENCE

### A. Fingerprints

"Negative" fingerprint results on Cowdrey were withheld and in their place an "inconclusive" finding was fabricated during the investigation and at the criminal Preliminary Hearing. The Preliminary Court, Cowdrey and her criminal defense attorney were misled to believe that Cowdrey's finger print results were "inconclusive"; meaning all Property Room employees could be ruled out, *except her*.

1. Neither Cowdrey or her criminal defense attorney were aware that her fingerprint examination results were actually "negative", the results were represented to them as "inconclusive" through-out the criminal prosecution.

2. Defendants police officers admit they were aware that Cowdrey's finger print results were "negative". But, did not report Cowdrey's negative results to the Preliminary Court. Instead, Defendant's Police and Prosecution Reports stated only the finger print results were negative "to the known finger prints of the property room personnel", without mentioning Cowdrey's name;

3. But, this same report (and all other Prosecution and Supplemental reports) *single out Cowdrey* by name to state, Fingerprint Examiner Yerton advised Cellino "He was able to eliminate all property room personnel as suspects *except Officer Anna Cowdrey*." This was a wholly false representation to the

2

Preliminary Court, Cowdrey's criminal defense attorney and Cowdrey;

4. Further down the same page of the Report, Stout and Cellino swore to the Preliminary Court that "the fingerprint examination of Anna Cowdrey's prints and the prints found on the envelopes were **inconclusive.**"

5. No explanation or "clue" could be given by anyone why Stout and Cellino reported Cowdrey's fingerprint results as "inconclusive".

6. Police Chief Dave Been testified that "inconclusive" meant Cowdrey could not be ruled out, *as were other Property Room personnel with this finger print evidence.* "Inconclusive" left Cowdrey "dangling".

7. Police Chief Dave Been testified that early on the investigation narrowed down to Cowdrey based on initials and finger print evidence. Testimony also exists that the fingerprint evidence was *useful; very important; "negative" results would have helped Cowdery; it would have taken some light off her; Chief Been would have liked to have known in April or May, 2003, that the results were "negative" before the thing took off any more; Chief Been does not think its alright that Stout swore to the preliminary court that the finger print exam was "inconclusive" when it was "negative".*

**A. Post-It Note**

Neither Cowdrey or her criminal defense attorney knew or were aware that a Post-it Note containing her work computer access code had been found on or near her Property Room computer or discussed by the investigators, Stout and Cellino; until discovery efforts in this civil case. Cowdrey's work computer access code was found on a Post-It Note near

3.

the computer she used in the Property Room. Testimony exists that:

1. The Post-It Note was important evidence and it would have helped exonerate Cowdrey from criminal charges;

2. The existence of the Post-It Note was not mentioned in any of Stout or Cellino's Reports, Supplemental or Prosecution Reports. Stout could offer no explanation why this fact was not mentioned in any reports;

3. The Post-It Note was <u>not</u> mentioned at the Preliminary hearing, the Preliminary Hearing Court did not hear or learn about the Post-It Note;

### C. Evidence Hidden In Desk

Neither Cowdrey or her criminal defense attorney knew or were aware that pages were missing from a Property Room Inventory List used to prosecute her. Further, they were unaware that the original of this Inventory List (with all the pages) was not logged in as evidence and was hidden. Testimony exists that:

1. Whitney Allen kept the original Inventory List in her desk <u>prior to and during Preliminary hearing</u>, then given to Tracy Clark to put in her desk;

2. Procedure was not followed regarding the Inventory List, evidence was hidden and it caused Cpl. Clark and Sgt. Holman(Internal Affairs) concern;

3. This Inventory List was important evidence, it linked Cowdrey to the missing items she was prosecuted on;

4. Sgt. Cellino did not give Cowdrey or her criminal defense attorney the complete Inventory List and does not know how they would have gotten a copy;

5. Chief Dave Been's "alarm bells went off" when he first learned this evidence had been locked in a desk drawer;

4

### D. Missing Vault Keys

The key to the Property Room Vault went missing <u>about 3 to 6 months before Cowdrey was accused of any wrong doing</u> in the Property Room. Defendant Whitney Allen lost the Vault Key and that meant that each individual listed as a suspect (property room personnel) had free access to the monies kept in the Vault. Testimony exists that:

1. Even though Cowdrey was accused of taking money from the Vault, Whitney Allen did not tell the Preliminary Hearing Court that the Vault Key had been missing for some time;

2. According to Whitney Allen, the other Property Room personnel/suspects had access to the Vault and security doors leading to it;

### E. Condition of the Property Room

The poor condition of the Police Property Room was concealed by Defendant Whitney Allen. Cellino and Stout ignored Cowdrey's repeated efforts to inform them of the condition of the Property Room before and after she was charged with crime(s) related to the Property Room.

The Preliminary Hearing Judge was mislead by the Defendants (to this lawsuit) to believe that it was significant Cowdrey's hand writing was on a series of receipts. In fact, due to the very nature of her job in the Property Room and the poor conditions of the Property Room, Cowdrey's hand writing was on many thousands of receipts. The Property Room conditions were such that Cowdrey's hand writing on any one or more receipts did not mean she had handled the item(s). The Defendants acted to conceal and mislead as to the actual Property Room conditions, and thus "procedures" in place, in an improper effort

5.

to harm Cowdrey. Testimony exists that:

1. Whitney Allen led Stout and Cellino to believe that Property Room was performing its job and she could find what she needed in it. She did not inform them of her 8/01 and 8/02 Memos stating she couldn't confirm what was actually in the Property Room;

2. Both 8/01 and 8/02 Memos would have been important so persons knew Allen could not ascertain what cash was in the Property Room;

## F. Suspects Assigned to Property Room & Found Evidence

Charges against Cowdrey were first declined. Then Whitney Allen and Tracy Clark found new evidence. Whitney Allen and Tracy Clark were originally listed as suspects, neither was ever informed they had been eliminated from the investigation and both were left working daily in the Property Room with all the evidence. Felony and misdemeanor charges were then brought again against Cowdrey. By her own testimony; and that of Stout and Cellino, Whitney Allen led the investigation, found all the evidence, provided the evidence to Stout and Cellino from the beginning of the investigation to the end. During this same period Whitney Allen's husband was in medical school, they were living off her income and his student loans and, yet, taking expensive ocean Cruises.

The suspects should not have been conducting the investigation, finding and producing the evidence; instead, Whitney Allen and Tracy Clark should have been isolated from the evidence and search for evidence. These same complaints were made directly to Chief Dave Been by Cpl. Clark and Cpt. Hummel (then commander of Police Internal Affairs).

6.

Respectfully submitted,

/s/ Tim Gilpin

TIMOTHY S. GILPIN, OBA #11844
1645 South Cheyenne
Tulsa, Oklahoma 74119
(918) 583-8900
timgilpin@gilpinlaw.net
Attorney for Plaintiff, Anna Maria Cowdrey

## CERTIFICATE OF MAILING

I, Timothy S. Gilpin, hereby certify that on October 20, 2006, I transmitted the forgoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF Registrants:

Michael Romig
Senior Assistant City Attorney
200 Civic Center, Room 316
Tulsa, OK 74103
mromig@ci.tulsa.ok.us

a n d

ThomasLayon
6th floor, Pratt Tower
125 West 15th Street
Tulsa, OK 74119
thom@layonlaw.com

(Exhibit-c)

 **CITY OF Tulsa** A New Kind of Energy.

**Forensic Laboratory**
**TULSA POLICE DEPARTMENT**

### LABORATORY REPORT

INCIDENT NO: 2010-033865                                          LAB FILE NUMBER: 2010-1158
PROPERTY RECEIPT NO: BE-6525
CUSTOMER: Tulsa Police Department, 600 Civic Center, Tulsa, Oklahoma 74103
REQUESTOR: M. Farrell, DET.

──────────── Supplemental Report #A ────────────

**Victim(s): Stephen Rodolf**

**Suspect(s): None listed**

The evidence was received from the Tulsa Police Department Detective Division on Thursday 6-24-10.

**Description of Evidence:**

Latent Print #(Tue)062210-02000-1 – One tape sealed latent envelope marked "MYF" containing twenty-seven (27) latent cards.

**Results of Examination:**

The latent prints recovered from this investigation have been searched through the Automated Fingerprint Identification System with negative results.

Please obtain the elimination fingerprints of the victim(s) and submit them to the forensic laboratory for comparison. Please be sure to include palm prints.

2010-0338-65

Administrative Review _____
Technical/Peer Review _____
Report Completed: _____

cc: Requestor
Records
Det. J. White

*Robert R. Yerton*
**Robert R. Yerton, LAB**
Forensic Technical Manager
Pursuant to O.S. Title 22, Section 751, I hereby certify that I
am the maker of this document and that it is a true and correct
report of my findings based upon opinion and interpretation.

This Report shall not be reproduced, except in full, without the approval of the Laboratory

1111 W. 17th • Tulsa, OK 74107 • Office 918.596.9266 • Fax 918.596.1875

118



**Forensic Laboratory**
**TULSA POLICE DEPARTMENT**

**LABORATORY REPORT**

INCIDENT NO: 2010-033865
PROPERTY RECEIPT NO: BE6620
CUSTOMER: Tulsa Police Department, 600 Civic Center, Tulsa, OK 74103
REQUESTOR: T. Taylor, RID

LAB FILE NUMBER: 2010-1197

---

Name associated with this request: Stephen John Rodolf.

*The following item was received from the Tulsa Police Department Property Room on 02/08/11, and analyzed for the presence of human DNA (deoxyribonucleic acid). Testing was performed on this item between 02/08/11 and 02/17/11. When obtained, DNA was characterized at the Amelogenin locus, and the following STR (short tandem repeat) loci: Penta D, Penta E, and the thirteen core loci using PCR (polymerase chain reaction). For more information on the thirteen core loci (D8S1179, D21S11, D7S820, CSF1PO, D3S1358, TH01, D13S317, D16S539, vWA, TPOX, D18S51, D5S818, and FGA) visit the website: http://www.cstl.nist.gov/biotech/strbase/fbicore.htm*

Item #2    **DNA Collection Swab from Item #1 (…"Magazine"…) in a Sealed White Paper Envelope**
DNA information obtained from a cutting of this item appears to have come from at least one individual.

*This item was returned to the Tulsa Police Department Property Room on 02/16/11. Conclusions based upon this STR result and the STR result reported previously on 10/28/10 by Jonathan Wilson for Lab-File Number 2010-1158 Property Receipt BE6525 Item #59 (Buccal Swabs from Ryan Smith), and the STR results reported previously on 12/13/10 by Byron Smith for Lab-File Number 2010-1158 Property Receipt BE6620 Item #3 (Buccal Swabs from William Tottress), and Item #4 (Buccal Swabs from Byron Smith) are as follows:*

**Item #2:**
The individuals Ryan Smith, William Tottress, and Byron Smith are excluded as potential contributors to the DNA information obtained from this item. The DNA information obtained appears to be from an unknown individual for whom a reference sample was not submitted. This DNA information is suitable for comparison to additional reference samples, but is not suitable for entry into the DNA database.

*The DNA extract from the following item was analyzed for the presence of male-only Y-chromosomal DNA (deoxyribonucleic acid). When obtained, DNA was characterized at the following Y-STR (short tandem repeat) loci: DYS456, DYS389I, DYS390, DYS389II/DYS458, DYS19, DYS385a/b, DYS393, DYS391, DYS439, DYS635, DYS392, YGATAH4, DYS437, DYS438, and DYS448 using PCR (polymerase chain reaction). For more information on Y-STR haplotyping visit the website: http://www.cstl.nist.gov/biotech/strbase/kits/Yfiler.htm*

Item #2    **DNA Collection Swab from Item #1 (…"Magazine"…) in a Sealed White Paper Envelope**
No Y-chromosomal DNA information was obtained from the remaining DNA extract of this item.

*Byron C. Smith* 02/22/11
**Byron C. Smith, LAB**

Senior Forensic Scientist
Pursuant to O.S. Title 22, Section 751, I hereby certify that I am the maker of this document and that it is a true and correct report of my findings based upon opinion and interpretation.

Administrative Review LC 02/11/11
Technical/Peer Review *[illegible]*
Requestor:
Records
S. Douglas, DET
D. Walker, DET
LFN 2010-1158

COPY

This Report shall not be reproduced, except in full, without the approval of the Laboratory.

1111 W. 17st. • Tulsa, OK 74107 • Office 918.596.9266 • Fax 918.596-1875
www.cityoftulsa.org



**Forensic Laboratory**
**TULSA POLICE DEPARTMENT**

LABORATORY SUPPLEMENTAL REPORT A

INCIDENT NO: 2010-033865                                   LAB FILE NUMBER: 2010-1158
PROPERTY RECEIPT NO: BE 6525
CUSTOMER: Tulsa County District Attorney, 500 South Denver Ave. Suite 900, Tulsa, Oklahoma  74103
REQUESTOR: T. Evans, ADA

*Testing was performed on the following items from 10/18/10 to 10/25/10. The following items were received from the Property Room on 10/15/10 and analyzed for the presence of human DNA (deoxyribonucleic acid). When obtained, DNA was characterized at the Amelogenin locus, and the following STR (short tandem repeat) loci: Penta D, Penta E, and the thirteen core loci using PCR (polymerase chain reaction). For more information on the thirteen core loci (D8S1179, D21S11, D7S820, CSF1PO, D3S1358, TH01, D13S317, D16S539, vWA, TPOX, D18S51, D5S818, and FGA) visit the website: http://www.cstl.nist.gov/biotech/strbase/fbicore.htm*

<u>**Item #59    Buccal Swabs from Ryan Smith in a Sealed White Paper Envelope**</u>
A complete DNA profile was obtained from this individual.

---

<u>**Item #7     Swabs (2) from "Floor Handle Swab (From Under-Sink Drawer)" in a Sealed White Paper Envelope**</u>
DNA information obtained from the combined cutting of swab one (S1) and swab two (S2) of this item appears to be a mixture of at least two individuals.

<u>**Item #8     Swabs (2) from "Knife Drawer Handle Swab" in a Sealed White Paper Envelope**</u>
DNA information obtained from the combined cutting of swab one (S1) and swab two (S2) of this item appears to be a mixture of at least three individuals.

<u>**Item #9     Swabs (2) from "Under Sink Cabinet Door Pull" in a Sealed White Paper Envelope**</u>
DNA information obtained from the combined cutting of swab one (S1) and swab two (S2) of this item appears to be a mixture of at least two individuals.

<u>**Item #10    Swabs (2) from "Left Desk Drawer" in a Sealed White Paper Envelope**</u>
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

<u>**Item #11    Swabs (2) from "Right Desk Drawer" in a Sealed White Paper Envelope**</u>
No DNA information was obtained from the combined cutting of swab one (S1) and swab two (S2) of this item.

<u>**Item #12    Swabs (2) from "Safe Key Pad" in a Sealed White Paper Envelope**</u>
DNA information obtained from the combined cutting of swab one (S1) and swab two (S2) of this item appears to have come from one individual.

*The above items were returned to the Property Room on 10/18/10. Conclusions based on these STR results and the STR results reported on 10/13/10 for Item #16 S1 & S2 (Steering Wheel Swabs), Item #17 S1 & S2 (Gear Shifter Swabs), Item #21 S1 & S2 (Drivers Interior Door Grab Swabs) and Item #25 S1 & S2 (Front Passenger Side Door Interior Grab Swabs) are as follows:*

COPY

This Report shall not be reproduced, except in full, without the approval of the Laboratory

150

1111 W. 17st. • Tulsa, OK 74107 • Office 918.596.9266 • Fax 918.596.1875



CITY OF
**Tulsa**
A New Kind of Energy.

**Forensic Laboratory**
**TULSA POLICE DEPARTMENT**

INCIDENT NO: 2010-033865
PROPERTY RECEIPT NO: BE 6525

LAB FILE NUMBER: 2010-1158

1. Item #7 S1&S2:
   Ryan Smith is excluded as a potential contributor to the mixture of DNA information obtained from this item. The mixture of DNA information obtained from this item does have clear major and minor contributors. The major contributor appears to be from an unknown female for whom a reference sample was not submitted. The minor contributor appears to be from an unknown individual for whom a reference sample was not submitted. The DNA information from the major and minor contributor is suitable for comparisons to additional reference samples. However, the DNA information from the minor contributor would be expected to be found in 1 in every 12 U.S. Caucasians, 1 in every 24 African-Americans, or 1 in every 22 Southwestern Hispanics. The DNA information obtained from the major and minor contributor is not suitable for entry into the DNA database.

2. Item #8 S1&S2:
   Ryan Smith is excluded as a potential contributor to the mixture of DNA information obtained from this item. The mixture of DNA information obtained from this item appears to be from unknown individuals, of which at least one is male. This mixture of DNA information is suitable for comparison to reference samples. However, the mixture does not have clear major or minor contributors, so a statistical value for inclusion cannot be calculated. The mixture of DNA information is not suitable for entry into the DNA database.

3. Item #9 S1&S2:
   Ryan Smith is excluded as a potential contributor to the mixture of DNA information obtained from this item. The mixture of DNA information obtained from this item appears to be from unknown individuals, of which at least one is male. This mixture of DNA information is suitable for comparison to reference samples. However, the mixture does not have clear major or minor contributors, so a statistical value for inclusion cannot be calculated. The mixture of DNA information is not suitable for entry into the DNA database until a reference sample from the victim is analyzed.

4. Item #12 S1&S2:
   Ryan Smith cannot be excluded as a potential contributor of the DNA information obtained from this item. Based on the DNA information obtained from the thirteen core loci, the probability of selecting an individual at random who could have contributed this information is 1 in 2,200 U.S. Caucasians, 1 in 260 African-Americans, or 1 in 2,400 Southwestern Hispanics. This DNA information is not suitable for entry into the DNA database.

5. Item #16 S1&S2:
   Ryan Smith is excluded as a potential contributor to the DNA information obtained from this item. The DNA information obtained from this item appears to have come from an unknown male individual. This unknown DNA information is suitable for comparisons to reference samples and has been entered into the DNA database.

6. Item #17 S1&S2:
   Ryan Smith cannot be excluded as a potential contributor of the DNA information obtained from this item. Based on the DNA information obtained from the thirteen core loci, the probability of selecting an individual at random who could have contributed this information is 1 in 2 U.S. Caucasians, 1 in 2 African-Americans, or 1 in 2 Southwestern Hispanics. This DNA information is not suitable for entry into the DNA database.

This Report shall not be reproduced, except in full, without the approval of the Laboratory

**151**

1111 W. 17th. • Tulsa, OK 74107 • Office 918.596.9266 • Fax 918.596.1875



CITY OF
A New Kind of Energy.

Forensic Laboratory
**TULSA POLICE DEPARTMENT**

INCIDENT NO: 2010-033865
PROPERTY RECEIPT NO: BE 6525

LAB FILE NUMBER: 2010-1158

---

7. <u>Item #21 S1&S2:</u>
Ryan Smith is excluded as a potential contributor to the mixture of DNA information obtained from this item. The mixture of DNA information obtained from this item appears to be from unknown individuals, of which at least one is male. This mixture of DNA information is suitable for comparison to reference samples. However, the mixture does not have clear major or minor contributors, so a statistical value for inclusion cannot be calculated. The mixture of DNA information was not entered into the DNA database.

8. <u>Item #25 S1&S2:</u>
Ryan Smith is excluded as a potential contributor to the DNA information obtained from this item. The DNA information obtained from this item appears to have come from an unknown male individual. This unknown DNA information is suitable for comparisons to reference samples but is not suitable for entry into the DNA database.

Administrative Review _Bes;0C8/0_
Technical/Peer Review _NWe___
cc: Requestor
    Records
                _10-29.50_

_____ _10280_
Jonathan Wilson, LAB
Forensic DNA Technical Manager

Pursuant to O.S. Title 22, Section 751, I hereby certify that I am the maker of this document and that it is a true and correct report of my findings based upon opinion and interpretation.

This Report shall not be reproduced, except in full, without the approval of the Laboratory

**152**



Forensic Laboratory
**TULSA POLICE DEPARTMENT**

LABORATORY SUPPLEMENTAL REPORT B

INCIDENT NO: 2010-033865                                    LAB FILE NUMBER: 2010-1158
PROPERTY RECEIPT NOs: BE 6620 and BE 6525
CUSTOMER: Tulsa County District Attorney, 500 South Denver Ave. Suite 900, Tulsa, Oklahoma 74103
REQUESTOR: T. Evans, ADA

*The following items were received from the Tulsa Police Department Property Room on 12/02/10, and analyzed for the presence of human DNA (deoxyribonucleic acid). Testing was performed on these items between 12/06/10 and 12/09/10. When obtained, DNA was characterized at the Amelogenin locus, and the following STR (short tandem repeat) loci: Penta D, Penta E, and the thirteen core loci using PCR (polymerase chain reaction). For more information on the thirteen core loci (D8S1179, D21S11, D7S820, CSF1PO, D3S1358, TH01, D13S317, D16S539, vWA, TPOX, D18S51, D5S818, and FGA) visit the website: http://www.cstl.nist.gov/biotech/strbase/fbicore.htm*

**Property Receipt BE 6620:**
**Item #3     Buccal Swabs from William Tottress in a Sealed White Paper Envelope**
**Item #4     Buccal Swabs from Byron Smith in a Sealed White Paper Envelope**
Complete DNA profiles were obtained from these individuals.

*The above items were returned to the Property Room on 12/10/10. Conclusions based on these STR results and the STR results reported on 10/13/10 for Property Receipt BE 6525 Item #16 S1 & S2 (Steering Wheel Swabs), Item #17 S1 & S2 (Gear Shifter Swabs), Item #21 S1 & S2 (Drivers Interior Door Grab Swabs) and Item #25 S1 & S2 (Front Passenger Side Door Interior Grab Swabs), and the STR results reported on 10/28/10 for Property Receipt BE 6525 Item #7 S1 & S2 (Under Sink Drawer Swabs), Item #8 S1 & S2 (Knife Drawer Handle Swabs), Item #9 S1 & S2 (Under Sink Cabinet Door Swabs), and Item #12 S1 & S2 (Safe Key Pad Swabs) are as follows:*

1. Item #7 S1&S2, Item #8 S1&S2, Item #9 S1&S2, and Item #21 S1&S2:
   Byron Smith and William Tottress are excluded as potential contributors to the mixtures of DNA information obtained from these items.

2. Item #12 S1&S2, Item #16 S1&S2, Item #17 S1&S2, and Item #25 S1&S2:
   Byron Smith and William Tottress are excluded as potential contributors to the DNA information obtained from these items.

Administrative Review _____ 6-14-10
Technical/Peer Review _____
                                    12510
cc:   Requestor
      Records

_Byron C. Smith_ 12/13/10
**Byron C. Smith, LAB**
Forensic Scientist II
Pursuant to O.S. Title 22, Section 751, I hereby certify that I am the maker of this document and that it is a true and correct report of my findings based upon opinion and interpretation.

This Report shall not be reproduced, except in full, without the approval of the Laboratory

1111 W. 17ª. • Tulsa, OK 74107 • Office 918.596.9266 • Fax 918.596-1875
www.cityoftulsa.org



#643898 SG-1-m
Ryan K. Smith
DACC
P.O. Box 260
Hominy, Oklahoma, 73051

LEGAL MAIL

To: United States District Clerk's Office
Mark McCarH, Clerk
Page Belcher Federal Bldg. And U.S. Courthouse
333 W. 4th St, Rm #411
Tulsa, Oklahoma. 74103

RECEIVED
SEP 03 2024
Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

Postmarked 8/31/2024

US POSTAGE
$010.00⁰



This correspondence is from an offender under the custody of the Oklahoma Department of Corrections (ODOC). For specific information about the offender sending this correspondence such as offense, projected release date, photo, etc., refer to our website at www.ok.gov/doc. Click on the "Offender Information" link then the "Offender Lookup" link or contact (list facility contact and facility telephone number) at the facility telephone. Further, the facility is not responsible for the substance or content. Objectionable material may be returned to the facility head at: Lexington A & R Center, P.O. Box 260, Lexington, OK 73051-0260.